502 P.2d 401

**In the Matter of Rate of Return of the Mountain States Telephone & Telegraph Company for year ended December 31, 1970.**

**CORPORATION COMMISSION of the State of New Mexico, Appellee,**

v.

**MOUNTAIN STATES TELEPHONE & TELEGRAPH COMPANY, Appellant.**

**No. 9330.**

Supreme Court of New Mexico.

Oct. 27, 1972.

Bigbee, Byrd, Carpenter & Crout, Harry L. Bigbee, Paul D. Gerber, Santa Fe, Laurence W. DeMuth, Jr., Denver, Colo., for appellant.

David L. Norvell, Atty. Gen., Thomas Patrick Whelan, Jr., James B. Mulcock, Jr., Asst. Attys. Gen., Santa Fe, for appellee.

OPINION

OMAN, Justice.

This cause was removed to this Court from the State Corporation Commission, hereinafter called Commission, by Mountain States Telephone and Telegraph Company, hereinafter called Mountain Bell, pursuant to Art. XI, § 7 of the New Mexico Constitution. The removal was prompted by the entry of the Commission's "Interim Order No. 3053" dated August 26, 1971, and with which order Mountain Bell indicated it would not comply.

Pursuant to a joint application of the parties addressed to this Court, the facts are before us upon stipulation. These facts are:

(1) Mountain Bell provides, inter alia, interstate and intrastate telephone communications service in New Mexico. Tariffs for intrastate communications are regulated by the Commission pursuant to Art. XI, § 7, supra.

(2) As a necessary part of this service, Mountain Bell publishes, on a recurring basis, directories for each city and town within the State in which it furnishes services. The compilation, publication and delivery of telephone directories is a service essential to the communications service furnished by Mountain Bell and to a viable communications system within the State.

(3) "The directories are each divided into two (2) principal sections: The alphabetical listing of all subscribers within the coverage of the particular directory (except those requesting non-listing)—'white pages'; and the classified listing of business subscribers—'yellow pages.' Business customers are listed in both the white pages and the yellow pages of the directory; and residence subscribers are listed in the white pages only. * * *"

Subscribers are furnished, at no additional charge, said listing or listings and a copy of the directory as a necessary incident of telephone service.

"In addition to the listings to which each subscriber is entitled without charge, * * * subscribers may purchase advertising in the form of bold face listings or advertising insertions in the directory (the latter in the yellow pages only)."

(4) "Publication of the New Mexico telephone directories and all other telephone directories within the operating territory of Mountain Bell is controlled and managed by a line organization which functions separate [sic] and apart from the other operating divisions of the Company which are engaged in the furnishing of telephone communications. The New Mexico Directory Manager reports to a Division Directory Manager in Phoenix [Arizona] who, in turn, reports to the Assistant Vice President-Directory in Denver [Colorado]. The New Mexico Directory Manager does not report to the Vice President and General Manager for the State of New Mexico who is responsible for the furnishing of telephone and other communications services within the State * * *. The relationship between the telecommunication operation division and the directory division is one of coordination. This relationship is similar to that which exists between the New Mexico operations division, on the one hand, and Western Electric Co. representatives and the long-line department of A. T. & T. Co., on the other hand."

(5) "* * * [A] directory would have to be published in a form similar to that presently used whether or not Mountain Bell also engaged in the advertising business by the sale of advertising in the directory. The sale of such advertising is not essential to the furnishing of an adequate directory or essential to furnishing adequate communications. Engaging in the business of advertising is completely discretionary with Mountain Bell.

"* * * * *

"The inclusion or exclusion of advertising material in * * * [the] directory is not pursuant to any certificate of public convenience and necessity, or pursuant to any franchise granted in the State.

"* * * * *

"In computing the franchise fees paid by Mountain Bell to the various cities it serves, the gross receipts of the utility's business upon which the fees are based do not include any revenues from directory advertising."

(6) "Mountain Bell's tariffs do not now nor have they ever referred to rates, charges, form, content, existence, or any other matter relating to the sale of advertising or the publication of advertisements in any section of the directory; and such matters are not now and never have been a subject of the tariffs filed with the Commission."

(7) "The rates charged for this advertising and for bold face listings are set by contract between Mountain Bell and the advertiser. Whether or not advertising is purchased is entirely discretionary with the customer and * * * regular listings * * * appear [in the directory] without regard to the customer's decision as to the purchase of advertising. The rates

charged for advertising and bold face listings are not subject to review by the Commission and the Commission has never investigated or otherwise reviewed those rates for the purpose of exercising any control over them. The customer is billed for advertising by separate account, and non-payment of the advertising bill is not cause for interruption of communications service."

(8) "The rates established for advertising in Mountain Bell's directories are determined solely by Mountain Bell in response to competition for the advertising budgets of its potential customers. Among the media in competition for portions of these advertising budgets are newspapers (particularly the classified sections), radio, television, magazines, local handbills distributed to every household, billboards and city directories. The city directories provide all of the information contained in the telephone directories (including telephone numbers), and more. They carry advertising similar in format to that carried in the telephone directories; they are commercially available to anyone who wishes to buy one for the price established by the publishers; they are generally purchased by most commercial establishments, but relatively few are purchased for private homes; and they are published, on a recurring basis, for all cities and towns of any size in New Mexico. None of these competitive media is required to publicly report in itemized fashion its revenues and expenses associated with advertising as the Commission has ordered Mountain Bell to do."

(9) "Mountain Bell maintains separate records for all direct costs associated with the compilation, publication, delivery, sales and promotion of directory advertising and allocations have been made by study of indirect costs such as those associated with intangible administrative costs. All such allocations have been made so that any error caused by allocation will always inure to the benefit of the ratepayer."

(10) "All salesmen of local telephone directory advertising work on a commission basis and are therefore paid on the basis of the advertising revenues produced by their efforts—which is the basis upon which salesmen for other advertising media are paid."

(11) "All costs and expenses incident to the compilation, publication, delivery, sales, and promotion of the said telephone directories are paid by Mountain Bell. All of said costs would be necessarily incurred (outside of expenses directly related to advertising) even if Mountain Bell did not engage in the advertising business. Moreover, all those costs currently allocated to advertising which are attributable to compilation, publication and delivery of the basic directory would have to be borne exclusively by the ratepayer."

(12) "Mountain Bell segregates and identifies on its books of account all revenues derived from the sale of advertising incident to the production of directories in the State of New Mexico. Directory advertising revenue in New Mexico directories during the year 1970 totaled $3,018,073. Included in this total is $284,582 of revenue derived from the sale of national yellow pages advertising. Most of the latter revenue comes from sales consummated outside of New Mexico for advertising in directories which are distributed to New Mexico telephone subscribers. Also included in the total revenues are $5,405 of commissions resulting from the sale of advertising to be published solely in other telephone company directories for areas outside the operating territory of Mountain Bell."

(13) "The net income from directory advertising is reported by Mountain Bell in all corporation reports designed to show the financial position of the corporation. Thus, the net income which Mountain Bell has realized in the past from directory advertising has been shown in prospectuses used by the corporation to raise debt and equity capital. By showing this additional

net income, the corporation presents a more favorable financial picture than it would if it had only the net income from its telecommunications services to show. This improves the credit of the company and enables it to obtain capital on more favorable terms. And, as additional income to the corporation, net income from directory advertising improves the ability of the corporation to cover expenses, to service debt capital, and to pay dividends on equity capital."

(14) "The Commission requires Mountain Bell to file an annual financial statement for each year on Annual Report Form M, such as shown in the record transmitted to the Court by the Commission in this cause * * *. This report includes accounts 523 and 649, * * * which are 'Directory advertising and sales' and 'Directory expenses,' respectively. Mountain Bell has furnished directory advertising revenues and expenses in its Annual Reports each year until it filed its report for the year 1970. * * * It has been Mountain Bell's consistent position that such reporting is for informational (i. e., auditing) purposes only, and the reported figures are not to be used in determining the company's return on its investment used and useful in the furnishing of those telecommunications services regulated by the Commission. The records of hearings before the Commission show that in at least three prior proceedings, the Commission had before it for consideration the rate of return of Mountain Bell both including and excluding directory advertising revenues and expenses. During 1967 hearings involving Mountain Bell, the Commission, on the record, stated that it did not know the extent of its jurisdiction over directory advertising income with respect to Mountain Bell's return on its telecommunications investment. The Commission, however, had never specifically passed upon the issue until the Order presently before this Court."

(15) "Mountain Bell excluded its intrastate directory revenues from its 1970 Annual Report for the year ending December 31, 1970, and Mountain Bell also excluded intrastate expenses associated with the production of advertising revenues in the State of New Mexico. (Accounts 523 and 649, respectively)."

(16) "While Mountain Bell did not include directory advertising revenues and expenses in its Annual Report to the Commission for the year 1970, it did supply this information to the Commission for auditing purposes. The purpose of the Commission's Order here under review is to have Mountain Bell report such information so that it may be used by the Commission in determining if Mountain Bell is earning a fair and reasonable return on its investment used and useful in the furnishing of telecommunications services."

The principal dispute between the parties, and the one we here decide, is whether the Commission has the authority to include Mountain Bell's net income from directory advertising in the Commission's calculations and determinations of rates to be charged by Mountain Bell for providing intrastate telephone service. The Commission contends it has this authority and predicates this contention upon the following language appearing in Art. XI, § 7 of the New Mexico Constitution:

"* * * in the matter of fixing rates of telephone and telegraph companies, due consideration shall be given to the earnings, investment and expenditure as a whole within the state. * * *"

The Commission would interpret this constitutional provision as embracing all earnings, investment and expenditures of Mountain Bell in the State, regardless of their relationship to the business of furnishing telephone service, whereas Mountain Bell insists that only earnings, investment and expenditures directly used or useful in telephone service may be considered by the Commission in fixing rates. It is apparent from the foregoing recited facts, which are before us by stipulation, and, therefore, beyond dispute, that the directory advertising business is not essential to furnishing adequate telephone serv-

ice; is handled independently of the operating divisions of Mountain Bell engaged in furnishing telephone service; is conducted as a distinct, separate and competitive business; and is engaged in by Mountain Bell solely on the basis of its own discretion, and not on the basis of any obligation imposed by the State of New Mexico. The Commission concedes that Mountain Bell may lawfully conduct a business or businesses not related to furnishing telephone service. It claims no regulatory jurisdiction over the directory advertising business and no concern therein, except for the power, in the fixing of telephone rates, to consider Mountain Bell's net income therefrom.

The Commission relies upon language found in California etc. Storage Co. v. Brundige, 199 Cal. 185, 248 P. 669 (1926); Re General Teleph. Co. of California, 41 P.U.R.3d 405 (Cal.Pub.Util.Comm.1961); Solomon v. Public Service Commission, 286 App.Div. 636, 146 N.Y.S.2d 439 (1955); Classified Directory Subscribers Ass'n v. Public Service Com'n., 127 U.S.App.D.C. 315, 383 F.2d 510 (1967); District of Columbia v. Chesapeake & Potomac Tel. Co., 86 U.S.App.D.C. 124, 179 F.2d 814 (1950). Unquestionably certain language appears in the decisions in those cases which, at least to some extent, supports the position of the Commission. However, in none of those cases was the issue the same as here presented, and the factual situation in none even closely approached the factual situation before us.

It is apparent from the foregoing recited facts that New Mexico subscribers to intrastate telephone service provided by Mountain Bell do benefit to some extent from the directory advertising business, since it is a profitable business. However, they will benefit to a greater extent if the Commission's position is correct and the profits from this business can properly be considered by the Commission in fixing rates for intrastate telephone service. If the Commission's theory be carried to its ultimate conclusion and the directory advertising business should sustain losses, or

Mountain Bell should enter into some other business or businesses not necessary to the business of furnishing adequate telephone service, and should sustain losses in the operation of such other business or businesses, the subscribers would then be required to pay more than a fair rate for the services furnished them.

It is obvious to us that the constitutional language quoted above and relied upon by the Commission refers to the whole of a company's earnings received from, investments in, and expenditures incurred in connection with the supplying of telephone or telegraph services within the State, and does not refer to earnings from, investments in, and expenditures incurred by such a company in some business unnecessary to the furnishing of adequate telephone or telegraph services. The subscribers to a public telephone service should be obliged to pay a fair rate for that service, but they should not be obliged to incur the risks of or share in the profits from some business which in no way affects the service. Their concern is getting proper telephone service at a fair price, and by subscribing to this service they cannot properly be expected to in any way suffer or benefit from some business which is not essential to the service for which they have subscribed and for which they are paying. If a telephone company engages in a business not necessary to the accomplishment of its obligations as a public utility, then its owners or stockholders, and not the subscribers for telephone service, should sustain all losses and enjoy any profits arising from the operation of this unnecessary business.

Although the following cases did not involve telephone or telegraph services, they were concerned with services furnished by other public utilities, and the decisions therein are consistent with the position we take. Lowell Gas Co. v. Department of Public Utilities, 324 Mass. 80, 84 N.E.2d 811 (1949); Re Central Maine Power Co., 1 P.U.R.3d 421 (Me.Pub.Util.Comm.1953); Everett v. Malden and Melrose Gas Light Co., 78 P.U.R.(NS) 129 (Mass.Dept. of Pub.

Util.1949); Re Montana-Dakota Utilities Co., 78 P.U.R.(NS) 33 (Mont.Pub.Serv. Comm.1949); Re Rochester Gas & E. Corp., 43 P.U.R.3d 210 (N.Y.Pub.Serv.Comm. 1962); Customers v. New York & Richmond Gas Co., 48 P.U.R.(NS) 25 (N.Y. Dept. of Pub.Serv.1943); Re Oklahoma Nat. Gas Co., 26 P.U.R.3d 149 (Okla.Corp. Comm.1958); Re Northern Utilities Co., 31 P.U.R.3d 24 (Wyo.Pub.Serv.Comm.1959).

The Commission asks us to rule upon the following two issues for future guidance of the Commission: (1) Does the Commission have authority to issue interim orders such as Interim Order No. 3053 without notice and hearing? (2) Does the Commission have the authority to order a public utility to dispose of monies earned in excess of the rate of return fixed by the Commission?

These questions arise from the fact that in the Commission's Order No. 2954 dated July 9, 1969, which is not before us, but to which reference is made in Interim Order No. 3053, the Commission, among other things, ordered:

"That the rate of return [of Mountain Bell] is not to exceed 8.0% of the rate base as defined in Number 5 above.

" * * * *

"That there will be annual review by May 31 each year by the State Corporation Commission as to the rate of return and rates will be adjusted if necessary. On and after December 31, 1969, the figures used to determine the rate of return for the preceding year will be the actual figures taken from the books and records of the company and shown on the annual corporate report filed with the New Mexico State Corporation Commission."

Neither Order No. 2954 nor the record of the hearing leading to the entry of that order are before us in these proceedings. We assume by "interim order" the Commission means an order entered between hearings conducted pursuant to Art. XI, § 8 of the New Mexico Constitution. However, we are not certain this is precisely what the Commission has in mind. For this reason, and because Order No. 2954, which was entered over three years ago after a hearing, is not before us, we decline to speculate upon the Commission's authority to enter an "interim order" without notice or hearing. Quite clearly Art. XI, § 8, supra, requires that:

"The commission shall determine no question nor issue any order in relation to the matters specified in the preceding section, [Art. XI, § 7] until after a public hearing held upon ten [10] days' notice to the parties concerned, except in case of default after such notice. * * *"

In view of our holding that the receipts from the directory advertising business conducted by Mountain Bell do not fall within the jurisdiction of the Commission in establishing telephone rates, there is before us no issue of the authority of the Commission to dispose of monies earned in excess of the rate of return fixed by the Commission.

Enforcement of Interim Order No. 3053 should be denied.

It is so ordered.

McMANUS, and STEPHENSON, JJ., concur.