627 P.2d 1247

Thomas H. LYNCH and Florence M.
Lynch, his wife,
Plaintiffs-Appellants,

v.

SANTA FE NATIONAL BANK,
Defendant-Appellee.

No. 4900.

Court of Appeals of New Mexico.

May 5, 1981.

Certiorari Denied June 30, 1981.

T. G. Cornish, George Foster Hannett, Hannett, Hannett & Cornish, P. A., Albuquerque, for plaintiffs-appellants.

Jeffrey R. Brannen, Montgomery & Andrews, P. A., Santa Fe, for appellee.

## OPINION

WOOD, Judge.

The dispositive issue is whether a provision in an escrow agreement, which exculpates the escrow agent from liability for its negligence, is to be given effect. We discuss: (1) bargaining advantage, and (2) public interest.

Plaintiffs were purchasing real property from Lucero under a real estate contract. The plaintiffs, in turn, were selling this, and additional, real property to Buckley under a real estate contract. Both contracts were placed in escrow with defendant pursuant to written escrow agreements signed by the selling and purchasing parties. The escrows were accepted by defendant, subject to the terms and conditions of the escrow agreements.

Lucero declared the two real estate contracts to be in default and, at Lucero's request, defendant surrendered the various documents to Lucero. Litigation ensued; the trial court ordered specific performance of the Lucero-Lynch contract; the trial court's order was affirmed by the Supreme

Court by an unreported decision in *Carmichael v. Lynch and Lucero*, No. 12,123, decided May 24, 1979.

Plaintiffs then sued defendant for damages. Defendant admitted that it was negligent in terminating the escrows, but denied liability because of an exculpatory provision in the escrow agreements. The trial court gave effect to the exculpatory provision and dismissed the complaint. Plaintiffs appeal.

The escrow agreement pertaining to the Lynch-Lucero contract shows that defendant collected a $40.00 initial fee and was to receive an annual fee of $6.00 from Lucero. The escrow agreement pertaining to the Lynch-Buckley contract shows defendant collected a $40.00 initial fee. The Lynch-Buckley contract provides that defendant's annual collection charge was to be paid by Lynch. The contested exculpatory provision reads:

> 7. As a controlling part of the consideration for the acceptance of this escrow, it is agreed that the Bank shall not be liable for any of its acts or omissions done in good faith, nor shall it be liable for any claims, demands, losses or damages made, claimed or suffered by any party to this escrow, excepting such as may arise through or be caused by the Bank's wilful or gross negligence.

Plaintiffs do not claim that defendant's negligence was either willful or gross negligence.

New Mexico law sanctions exculpatory clauses of this kind. *Metropolitan Pav. Co. v. Gordon Herkenhoff & Assoc.*, 66 N.M. 41, 341 P.2d 460 (1959); see *City of Artesia v. Carter*, 94 N.M. 311, 610 P.2d 198 (Ct. App.1980).

*Tyler v. Dowell, Inc.*, 274 F.2d 890 (10th Cir. 1960), states:

> [E]xculpatory clauses in contracts of this kind are not favorites of the law. They are strictly construed against the promisee and will not be enforced if the promisee enjoys a bargaining power superior to the promisor, as where the promisor is required to deal with the promisee on his own terms.... Nor will a contract be enforced if it has the effect of exempting a party from negligence in the performance of a public duty, or where a public interest is involved.

Plaintiffs state: "This case involves the validity of such an exculpatory clause where both a public interest is at stake and where the party seeking the protection afforded by the clause enjoyed a decisive bargaining advantage over the victim of its negligence." Plaintiffs' argument is that a "public interest" or "bargaining advantage" situation modifies the rule stated in *Loyd v. Southwest Underwriters*, 50 N.M. 66, 169 P.2d 238 (1946): "The escrow holder's liability is both 'fixed and limited' by the contract under which it undertakes to perform the impartial function of stake-holder." We assume such a modification and decide whether the trial court properly gave effect to the above-quoted provision which exculpates defendant from its own negligence in handling the escrows.

*Bargaining Advantage*

It is uncontradicted that the exculpatory clause is part of a standard printed form, prepared and approved for use by defendant's attorney; that defendant does not negotiate with a party seeking to utilize defendant as an escrow agent, rather, defendant presents the form to the party for filling in the blanks and for signature; that a party cannot have the exculpatory clause removed by payment of an additional fee. Plaintiffs assert that defendant's form is presented to a party on a "take it or leave it" basis. We agree; under the evidence the only basis on which defendant will provide escrow services is stated in the terms and conditions of its printed form, and that form contains the exculpatory clause.

Plaintiffs assert that because the exculpatory clause was "written by the more

powerful bargainer to meet its own needs," the clause "should not be enforced to relieve the more powerful bargainer of the consequences of its own negligence." This argument is based on the reference to superior bargaining power in *Tyler v. Dowell, Inc.*, supra; however, this argument distorts what was stated in that case.

*Tyler v. Dowell, Inc.* refers to the promisee's "bargaining power superior to the promisor, *as where the promisor is required to deal with the promisee on his own terms.*" (Our emphasis.) Plaintiffs were required to deal with defendant on defendant's terms if plaintiffs were to obtain defendant's services, but that is not the meaning of "required to deal". "Required to deal" involves the absence of alternatives; specifically, whether plaintiffs were "free to use or not to use" defendant's escrow services. *Valley National Bank v. Tang*, 18 Ariz.App. 40, 499 P.2d 991 (1972).

Two cases cited by plaintiffs are illustrative. *Akin v. Business Title Corporation*, 264 Cal.App.2d 153, 70 Cal.Rptr. 287 (1968), involved negligence by the escrow agent. The exculpatory clause therein involved was not enforced because a public service was involved. We discuss public service in the next issue. The references in *Akin* to a "standardized contract of adhesion" and the "practical necessity" of members of the public agreeing to the exculpatory clause suggests an absence of an alternative. *Tunkl v. Regents of University of California*, 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693 (1963), involved negligence by a nonprofit, charitable hospital. The patient had signed an agreement containing an exculpatory clause which was not enforced because a public service was involved. Concerning superior bargaining power, *Tunkl* states: "The would-be patient is in no position to reject the proffered agreement, to bargain with the hospital, or *in lieu of agreement to find another hospital.* The admission room of a hospital contains no bargaining table . . . ." (Our emphasis.)

Plaintiffs also rely on *Baker v. City of Seattle*, 79 Wash.2d 198, 484 P.2d 405 (1971). That decision does not discuss relative bargaining power and is not in point. The disclaimer of liability clause in a rental agreement for a golf cart was inconspicuous. Referring to the equivalent of § 55–2–316(2), N.M.S.A.1978, *Baker* held: "To allow the respondent to completely exclude himself from liability by such an inconspicuous disclaimer, would truly be unconscionable." Other cases cited by plaintiffs deal with public interest and are discussed under that issue.

We agree with the following from defendant's answer brief: "[T]he record is devoid of any evidence that the Lynches sought any alternative sources of escrow, or alternatively, that in seeking such alternative sources of escrow, they encountered identical exculpatory language with no available alternatives, or that there were not available alternatives in the market place."

There being no showing of an absence of alternatives, there is no basis for applying the superior bargaining power concept of *Tyler v. Dowell, Inc.*, supra. This holding answers plaintiffs' contention; this answer, however, does not intimate that a position of superior bargaining power is, in itself, a basis for refusing to enforce an exculpatory clause in a contract. Superior bargaining power may be no more than one factor involved in determining whether an exculpatory clause is not to be enforced because of a public interest. *Valley National Bank v. Tang*, supra; *Tunkl v. Regents of University of California*, supra; *Akin v. Business Title Corporation*, supra; *Hy-Grade Oil Co. v. New Jersey Bank*, 138 N.J.Super. 112, 350 A.2d 279 (1975). The question of whether superior bargaining power is a basis, in itself, for refusing to enforce an exculpatory clause is not presented because the record does not establish a superior bargaining power, as explained herein.

558

*Public Interest*

■ *Tyler v. Dowell, Inc.* states that an exculpatory clause will not be enforced "if it has the effect of exempting a party from negligence in the performance of a public duty, or where a public interest is involved." *Southwestern Pub. S. Co. v. Artesia Alfalfa Ass'n*, 67 N.M. 108, 353 P.2d 62 (1960), states:

> The rule is well established that a provision in a contract seeking to relieve a party to the contract from liability for his own negligence is void and unenforceable, if the provision is violative of law or contrary to some rule of public policy. Under this limitation the courts are in complete accord in holding that a public service corporation, or a public utility such as an electric company, cannot contract against its negligence in the regular course of its business, or in performing one of its duties of public service, or where a public duty is owed, or where a public interest is involved.

There is no claim that the exculpatory clause in the escrow agreements is violative of statutory law, see *DiGesu v. Weingardt*, 91 N.M. 441, 575 P.2d 950 (1978) and *Safeco Ins. Co. of America, Inc. v. McKenna*, 90 N.M. 516, 565 P.2d 1033 (1977), or violative of a public policy, see *Granger v. Caviness*, 64 N.M. 424, 329 P.2d 439 (1958).

There is no claim that the exculpatory clause is violative of a public duty imposed by statute. See *Southwestern Pub. S. Co. v. Artesia Alfalfa Ass'n*, supra. Plaintiffs do not claim that defendant had a duty, under either federal or state statutes or regulations, to provide an escrow service. Compare *Corporation Com'n v. Mountain States Tel. & T. Co.*, 84 N.M. 298, 502 P.2d 401 (1972).

Plaintiffs do suggest the exculpatory clause was violative of the common law. They cite *McCutcheon v. United Homes Corporation*, 79 Wash.2d 443, 486 P.2d 1093 (1971). *McCutcheon* pointed out that, at common law, a landlord had an affirmative duty to use reasonable care to keep common areas in safe condition for the use of a tenant. The holding was that an exculpatory clause that destroyed the concept of negligence in the landlord-tenant relationship would not be enforced because of the possible "impact upon thousands of potential tenants. Under these circumstances it cannot be said that such exculpatory clauses ... are 'not a matter of public interest.'" New Mexico held that such an exculpatory clause did not violate public policy, *Commercial Warehouse Co. v. Hyder Brothers, Inc.*, 75 N.M. 792, 411 P.2d 978 (1965); see *Stromberg's v. Victor Gruen & Associates*, 384 F.2d 163 (10th Cir. 1967), and the statutory modification, § 47-8-16, N.M.S.A.1978. *Commercial Warehouse*, however, did not discuss the public interest concept.

*Tunkl v. Regents of University of California*, supra, outlines the public interest concept:

> In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics[:]
>
> ■ It concerns a business of a type generally thought suitable for public regulation.
>
> ■ The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.
>
> ■ The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

■ As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

■ In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation,[1] and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

■ Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller [of the service], subject to the risk of carelessness by the seller or his agents.

Plaintiffs contend that defendant, being a bank, was performing a service of public interest. They rely on *Hy-Grade Oil Co. v. New Jersey Bank*, supra, which involved an exculpatory clause in a night depository contract. In refusing to enforce the exculpatory clause, *Hy-Grade* stated:

Banks perform an important and necessary public service. It cannot be seriously argued that they are not affected with a public interest. That this is so is obvious from only a cursory examination of the extensive statutory regulations covering every phase of the banking business . . . .

We therefore hold that a bank cannot, by contract, exculpate itself from liability or responsibility for negligence in the performance of its functions as they concern the night depository service.

Contra, *Valley National Bank v. Tang*, supra.

Plaintiffs' reliance on *Hy-Grade Oil Co.* is misplaced because it assumes that defendant's escrow service is a banking function. Nothing in the record supports such an assumption. *Southwestern Pub. S. Co. v. Artesia Alfalfa Ass'n*, supra, points out that where the public interest is involved, a par-

ty "cannot contract against its negligence in the regular course of its business . . . ." 6A Corbin on Contracts § 1472 at 594 (1962) states:

If the provision against liability for negligence . . . is for some performance that the common carrier or other public servant is not required to perform as a part of its public duty, it is valid and enforceable to the same extent as it would be if made by one not engaged in public service at all.

Although defendant is a bank, that fact alone does not make defendant's escrow service either a banking function or a public service.

■ There being no claim that the escrow service was part of defendant's public duty, the question of whether the escrow service was a public service is to be determined without regard to the fact that defendant is a bank. In making that determination, we consider the items, quoted above, from *Tunkl v. Regents of University of California*, supra.

Plaintiffs contend that *Bishop v. Beecher*, 67 N.M. 339, 355 P.2d 277 (1960), establishes that an escrow service is a service of great importance to the public. We disagree. *Bishop* held that the advantages of real estate contracts far outweighed the disadvantages because of the "thousands of people who have been enabled to purchase property by merely paying for it over many years in a manner likened to rent . . . ." However, we recognize that real estate contracts are regularly, and possibly customarily, placed in escrow, and therefore assume, for the purposes of this appeal, that the escrow service provided by defendant was of importance to the public. *Akin v. Business Title Corporation*, supra, so held.

After examining the items, quoted above, from *Tunkl v. Regents of University of California*, *Akin v. Business Title Corporation* refused to enforce an exculpatory clause in an escrow agreement, stating:

1. For explanation of "contract of adhesion" see *Akin v. Business Title Corporation*, supra, footnote 4.

"Escrow companies, at least in the State of California, have such a pervasive effect on the economic life of our citizens that they have to some degree taken on a public character." This case differs from *Akin* in two ways.

First, *Akin* stated:

The transaction concerns a business of the type generally thought suitable for public regulation, and escrow companies have in fact been regulated to some degree by licensing requirements.... Since Financial Code sections 17200 et seq. set safety standards for escrow businesses, the escrow business is apparently thought to be a business suitable for public concern ....

The parties do not point out any regulation of the escrow business in New Mexico; we have found only two statutory references to escrows. Section 58–9–3(A)(6), N.M.S.A. 1978 (1980 Cum.Supp.), a part of the Trust Company Act, states that a corporation does not engage in the trust business by "engaging in the business of an escrow agent[.]" Section 48–7–8, N.M.S.A.1978, deals with mortgage escrow funds.

Second, as we pointed out in discussing bargaining advantage, *Akin*, supra, suggests that there were no alternatives to an escrow agreement with an exculpatory clause. We have pointed out that an absence of alternatives was not established in this case.

Because of these two differences, we decline to follow *Akin*.

The cases cited herein, which discuss whether an exculpatory clause should be enforced, recognize that such a decision is one of policy. Thus, *Tunkl v. Regents of University of California*, supra, discusses the policy of shifting the risk of negligence. The basic issue, however, involves the policy of freedom of contract and is concerned with when that freedom is to be restricted.

See *Valley National Bank v. Tang*, supra. *General Electric Credit Corporation v. Tidenberg*, 78 N.M. 59, 428 P.2d 33, 40 A.L. R.3d 1151 (1967), states:

[P]ublic policy encourages freedom between competent parties of the right to contract, and requires the enforcement of contracts, unless they clearly contravene some positive law or rule of public morals.

Compare *City of Artesia v. Carter*, supra.

There is no contravention of positive law and no clear contravention of public morals in this case. There is no showing that, in New Mexico, the escrow business is of the type thought generally suitable for public regulation. There is no showing that plaintiffs lacked an alternative to the exculpatory clause in the escrow agreements. Thus, we agree with the trial court that plaintiffs failed to show a sufficient reason to hold the exculpatory clause unenforceable.

The trial court correctly gave effect to the exculpatory clause; its judgment is affirmed. Accordingly, we do not reach the question raised by the fact that the exculpatory clause was a part of the consideration for defendant to accept the escrow agreements.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.