STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION AND THE PUBLIC STAFF v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY

No. 8110UC929

(Filed 1 June 1982)

1. Telecommunications § 1.2— telephone rates—revenues from advertising in yellow pages

Revenues received by a telephone company from advertising in the yellow pages of its telephone directory were properly considered by the Utilities Commission in establishing rates for the telephone company. G.S. 62-30; G.S. 63-32.

**2. Appeal and Error § 9— moot question**

> A telephone company's challenge to the rate of return on common equity allowed by the Utilities Commission was rendered moot when, pending the appeal of this case, the Commission in another case approved an additional rate increase and a higher rate of return on common equity for the telephone company.

APPEAL by Southern Bell Telephone Company from the North Carolina Utilities Commission. Order entered 15 April 1981. Heard in the Court of Appeals 9 April 1982.

Southern Bell (Bell) applied to the Utilities Commission (Commission) for a general rate increase of $68,174,088 in its annual rates and charges. Following hearings, the Commission issued its order granting Bell an increase of $41,281,000 annually. Bell excepted to those portions of the Commission's order dealing with the allowed rate of return and with the disposition of revenues from Bell's yellow page advertising.

*Thomas K. Austin, for the North Carolina Utilities Commission—Public Staff, intervenor-appellee.*

*Hunton and Williams, by Robert C. Howison, Jr., R. Frost Branon, Jr. and Gene V. Coker, for Southern Bell Telephone and Telegraph Company, defendant-appellant.*

WELLS, Judge.

[1]  In computing their gross revenues and expenses for the purposes of this rate case, Bell excluded the investment, revenues, and expenses associated with or resulting from advertisements placed by professional and business subscribers in the classified section of Bell's various telephone directories. The classified directory has acquired the title of and is generally referred to as the yellow pages. In its order, the Commission found and concluded that these revenues should be considered for rate-making purposes. In one of their assignments of error, Bell contends that the Commission's findings and conclusions on this issue were erroneous in that (1) the Commission exceeded its authority and (2) its findings on this issue were not supported by competent, material, and substantial evidence.

To put this question in clear focus, we quote in full the Commission's findings and conclusions on this issue, as follows:

FINDINGS OF FACT

. . .

9. The revenues, expenses, and net operating income of the Company's Directory Advertising Operations are properly includable in the cost of service in this proceeding.

. . . .

EVIDENCE AND CONCLUSIONS FOR FINDING OF FACT NO. 9

The evidence for this finding is contained in the testimony of Company witnesses Turner and Thomas and Public Staff Witness Daniel.

Company witness Turner eliminated $6,894,000 of net operating income applicable to directory advertising operations from his determination of net operating income for rate-making purposes. He stated that he had made this adjustment on the recommendation of Company witness Thomas.

Company witness Thomas stated this adjustment is appropriate in view of the present competitive environment. He stated that at the federal level there is the clear intent that we eliminate, insofar as possible, cross-subsidies among services.

Public Staff witness Daniel testified that the elimination of directory advertising is both inequitable and unjustified. To separate the operations of directory advertising from utility operations permits the Company to realize revenue directly related to the operations of a public utility but which will not be considered in establishing rates. Witness Daniel did not reflect the impact of the adjustment to directory advertising proposed by Company witness Turner in developing the test year cost of service.

The Commission recognizes that there is a movement toward the separation of ancillary services from the regulated area in the telephone industry. It also recognizes that competitive pressures may eventually be a factor in the marketing of directory advertising by Southern Bell in its North Carolina operations; however, based on the evidence presented, there is presently no substantial competition pos-

ing a threat to Southern Bell's advertising market in North Carolina. Moreover, none appears to be on the horizon. The classified directory, in which advertising appears, is an integral part of providing adequate telephone service; thus, the absence of the classified directory would diminish the value of telephone service to the Company's customers. Finally, this Commission has consistently over the years included directory advertising revenues and costs in determining Southern Bell's total cost of service.

Based on the foregoing and the entire evidence of record, the Commission concludes that revenues and costs associated with Southern Bell's directory advertising operations should be included in the test year for purposes of this proceeding.

The standard of judicial review of orders of the Utilities Commission is set forth in G. S. 62-94, as follows:

§ 62-94. Record on appeal; extent of review.

(a) On appeal the court shall review the record and the exceptions and assignments of error in accordance with the rules of appellate procedure, and any alleged irregularities in procedures before the Commission, not shown in the record, shall be considered under the rules of appellate procedure.

(b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision *if the substantial rights of the appellants* have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error. The appellant shall not be permitted to rely upon any grounds for relief on appeal which were not set forth specifically in his notice of appeal filed with the Commission.

(d) The court shall also compel action of the Commission unlawfully withheld or unlawfully or unreasonably delayed.

(e) Upon any appeal, the rates fixed or any rule, regulation, finding, determination, or order made by the Commission under the provisions of this Chapter shall be prima facie just and reasonable. (Emphasis added.)

The threshold question is whether the Commission exceeded its authority or jurisdiction by including yellow pages advertising revenues for rate-making purposes. While the Commission's grant of authority is wholly statutory, and it may exercise only such authority as has been delegated by the General Assembly, its statutory grant of authority is both broad and comprehensive. *See* G.S. 62-30 and 62-32.[1]

Two aspects of the yellow pages question quickly emerge on the record before us: (1) Bell has historically included revenues from yellow pages advertising in its revenues for rate-making purposes, and (2) its basic premise for its proposal to exclude

---

1. § 62-30. General powers of Commission. — The Commission shall have and exercise such general power and authority to supervise and control the public utilities of the State as may be necessary to carry out the laws providing for their regulation, and all such other powers and duties as may be necessary or incident to the proper discharge of its duties. § 62-32. Supervisory powers; rates and service. — (a) Under the rules herein prescribed and subject to the limitations hereinafter set forth, the Commission shall have general supervision over the rates charged and service rendered by all public utilities in this State. (b) The Commission is hereby vested with all power necessary to require and compel any public utility to provide and furnish to the citizens of this State reasonable service of the kind it undertakes to furnish and fix and regulate the reasonable rates and charges to be made for such service.

them in this case is that the yellow pages are a competitive activity and therefore Bell should not be required to continue to include such revenues for rate-making purposes. There was no suggestion by Bell that the classified directory does not serve an important or essential function to Bell's telephone subscribers.

The evidence on this question consisted of the testimony of Alan E. Thomas, Bell's Vice-President for North Carolina operations, Roderick G. Turner, Jr., Bell's accounting witness, and Donald E. Daniel, Assistant Director of the Accounting Division of the Public Staff.[2] On direct examination, Mr. Thomas' testimony on this question was extraordinarily brief, taking up but sixteen lines in the transcript. Mr. Thomas stated that in its filing in this case, Bell had made significant changes in the manner in which it had computed its revenue requirements,[3] and that one of these changes was to eliminate all revenues, expenses, and investment attributable to yellow page advertising. Mr. Thomas' sole justification for this change is that it was appropriate in the present competitive environment to separate from the regulated portions of Bell's operations competitive services such as the yellow pages. Mr. Thomas stated that the language of the Federal Communication Commission's Second Computer Inquiry Order[4] reflects the clear intent that "we [Bell] eliminate insofar as possible cross-subsidies among services". On cross-examination, Mr. Thomas discussed this question at some length. Generally, his cross-examination testimony on this point may be summarized as emphasizing four aspects of yellow page operations and function: (1) the tele-communication industry is undergoing significant changes in the direction of a more competitive environment; (2) yellow page advertising does not enjoy a monopoly position, but must compete with other forms of advertising; (3) Bell should be allowed to compete as freely as possible for such revenues, and

2. The Public Staff of the North Carolina Utilities Commission is charged with the duty of intervening in all Utilities Commission general rate cases on behalf of the using and consuming public. G.S. 62-15.

3. A term generally used to encompass revenues necessary to (1) meet all reasonable expenses of operation and (2) to meet the cost of capital, including a reasonable return on its investment.

4. Amendment of Sec. 64.702 of the Commission's Rules and Regulations (Second Computer Inquiry), dealing with the Deregulation of Terminal Equipment and Enhanced Services, 46 Fed. Reg. 5984 (1981) (to be codified at 47 C.F.R. Part 64).

(4) that yellow page operations have not historically been regulated in the same manner as basic telephone service.

Mr. Daniel's testimony on the question, in summary, was to the effect that telephone customers provide the market for yellow page advertising, that yellow pages cannot justifiably be separated from the overall provision of telephone service, and that the exclusion of yellow page revenues would result in higher rates for telephone service.

Mr. Daniel's testimony, and that of Bell's accounting witness, Roderick G. Turner, Jr., make it clear that the elimination of yellow pages revenues in this case would require an additional $14,000,000 in annual gross revenues from Bell's North Carolina customers.

It is appropriate to note at this point that Bell has the burden of showing that the changes in accounting for yellow pages revenues, proposed in this case, are just and reasonable. G.S. 62-75. The Commission's order in this case, as it relates to the question of yellow page advertising revenues, requires Bell to do no more than they did voluntarily and without objection for over half a century. This would seem to be strong evidence of the reasonableness of this accounting practice and rate-making principle. *Utilities Commission v. R.R.*, 256 N.C. 359, 124 S.E. 2d 510 (1962). The Commission did not rest, however, in asserting its authority over these disputed revenues, by simply reaching the conclusion that Bell had not carried its burden of showing, in this case, that the practice it had adherred to for so very long with respect to these revenues was no longer just and reasonable; the Commission went further, and concluded that Bell's classified directory was an essential aspect of telephone service generally. We are persuaded that in making this judgment, the Commission was clearly acting within its authority under G.S. 62-30 and 32. Accepting such judgment to be within the Commission's authority and duty, we are persuaded that the Commission correctly concluded that the classified directory advertising revenues should continue to be accounted for in establishing just and reasonable rates for Bell in North Carolina.

While we recognize the concern of Bell that it be able to deal with the emerging competitive environment in the telecommunications industry, we also recognize that we cannot substitute

our judgment for that of the Commission. In support of its argument, Bell has cited two decisions of the Courts of sister states: the opinion of the New Mexico Supreme Court in *Corporation Commission v. Mountain States Telephone and Telegraph Co.*, 84 N.M. 298, 502 P. 2d 401 (1972); and an order of the Superior Court of Fulton County, Georgia, in *Southern Bell Telephone and Telegraph Company v. Georgia Public Service Commission*, Case No. C-75044, order entered 21 September 1981. Both of those courts reached the conclusion that the publication of a classified directory was not essential to the furnishing of telephone service. A careful reading of the decision of the New Mexico Court and the order of the Georgia Court would indicate that in those cases, the Court simply substituted its judgment for that of the regulatory agency, which in each case had reached an opposite judgment. Under our standards of appellate review, this Court is not at liberty to substitute its judgment for that of the Utilities Commission. *See Thompson v. Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977). The Commission's findings and conclusions, being supported as they are by competent, material, and substantial evidence, considering the whole record, and taking into account any contradictory evidence or evidence from which conflicting inferences could be drawn, must be affirmed. *Thompson, supra.*

[2] In a separate assignment of error, Bell has challenged the rate of return on common equity allowed by the Commission in this case. The rate of return which Bell contends is confiscatory and unlawful is 13.5 percent. Pending the appeal of this case, the Commission, on 3 March 1982, entered its order in Docket Number P-55, Sub 794, in which it granted Bell an additional annual rate increase of $66,853,744, in which order the Commission approved a rate of return on common equity of 15.50 percent. Such action by the Commission renders this assignment of error moot in this case. We therefore do not consider it. *See Utilities Commission v. Southern Bell Telephone Co.*, 289 N.C. 286, 221 S.E. 2d 322 (1975).

For the reasons stated herein, the order of the Utilities Commission is

Affirmed.

Judges MARTIN (Harry C.) and WHICHARD concur.