STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION, AND THE NEW TELEPHONE COMPANY v. CENTRAL TELEPHONE COMPANY

No. 8210UC372

(Filed 18 January 1983)

**Utilities Commission § 20— general rate case—inclusion of expenses and revenues associated with yellow page advertising**

The Utilities Commission did not err in including the expenses and revenues associated with and derived from yellow page directory advertising in the revenues and expenses of a telephone company before determining what rate increase should be granted the telephone company since (1) the furnishing of classified advertising by a telephone company, more commonly known as the yellow pages, is an essential part of the service it provides, (2) there was no substantial competition posing a threat to the telephone company's advertising market in North Carolina, and (3) the Court was unwilling to substitute its judgment for that of the Utilities Commission.

APPEAL by Central Telephone Company from an order of the North Carolina Utilities Commission. Order entered 21 September 1981. Heard in the Court of Appeals 10 November 1982.

Central Telephone Company filed an application to increase its rates and charges for telephone service in North Carolina on 16 January 1981. The Utilities Commission declared this to be a general rate case and ordered public hearings on 18 February. The Public Staff and the New Telephone Company were allowed to intervene on 3 June.

Following public hearings on the matter, the Commission issued an order granting an annual increase of $3,119,990 in gross revenues. In this order, the Commission included the expenses and revenues associated with and derived from yellow page directory advertising in the revenues and expenses of Central. Telephone. In its application and presentation, Central had not included yellow page directory advertising revenues and expenses on the ground that they were not essential to providing telephone service to the public.

The net amount of revenue attributable to the yellow page advertising was $1,784,208 for the test year. Inclusion of this amount by the Commission increased the revenues available to Central to $56,659,619 and as a result, decreased the rate increase that was granted.

After a rehearing and amendment of its order by the Commission, the case was appealed to this Court solely on the yellow page issue. New Telephone is not a party to this appeal.

*Paul L. Lassiter and Antoinette R. Wike, for the North Carolina Utilities Commission-Public Staff, intervenor-appellee.*

*Kimzey, Smith & McMillan, by James M. Kimzey, for defendant-appellant.*

ARNOLD, Judge.

Before deciding the issue in this case, we note that the Utilities Commission has broad authority over regulated utilities in North Carolina under G.S. 62-30 and -32. The burden of proof is upon the utility seeking a rate increase to show that the proposed rates are just and reasonable. G.S. 62-75. *State ex rel. Utilities Comm'n v. S. Bell Tel. & Tel. Co.,* 24 N.C. App. 327, 210 S.E. 2d 543 (1975), *appeal dismissed,* 289 N.C. 286, 221 S.E. 2d 322 (1976). On appeals like the one before us, the rates fixed by the Commission "shall be prima facie just and reasonable." G.S. 62-94(e). 12 Strong's N.C. Index 3d *Telecommunications* § 1.9 (1978).

We find the recent case of *State ex rel. Utilities Comm'n v. S. Bell Tel. & Tel. Co.,* 57 N.C. App. 489, 291 S.E. 2d 789 (1982), to be persuasive. In that case, Southern Bell sought a general rate increase. The Commission granted only a partial increase. Bell appealed on the ground that the Commission improperly included its yellow page revenues and expenses in computing Bell's gross revenues and expenses.

In affirming the Commission's order, the Court reviewed the evidence as presented in the record and found that it was sufficient to support the order. Although that case differs from the one before us in that Southern Bell had included yellow page revenues for over 50 years prior to the application that was the subject of the case, we find the rationale of *Southern Bell* to be convincing.

Our decision rests on three grounds. First, we hold that the furnishing of classified advertising by a telephone company, more commonly known as the yellow pages, is an essential part of the service it provides. As a result, yellow page revenue and expenses should be included in the revenues and expenses of the company when it applies for a rate increase. This is clearly the majority rule. *See* 127 Cong. Rec. S11139-40 (daily ed. Oct. 6, 1981) (The District of Columbia and thirty of the thirty-five states that have decided the question consider directory advertising revenue in ratemaking cases.); 74 Am. Jur. 2d *Telecommunications* § 32 (1974).

In making our decision, we have not ignored our Supreme Court's statement in *Gas House, Inc. v. S. Bell Tel. & Tel. Co.*, 289 N.C. 175, 221 S.E. 2d 499 (1976), that yellow page advertisements are not a part of a telephone company's public utility business. But the holding in that case did not turn on the same issue that is before us. Instead, *Gas House* simply held that a limitation of liability clause in a contract between an advertiser in the yellow pages and Southern Bell was reasonable. Because that case was not decided on the issue that is central to the case *sub judice* and because the court's statement about the yellow pages was *obiter dictum*, we are not bound by it. *Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474 (1960). 1 Strong's N.C. Index 3d *Appeal and Error* § 69 (1976).

A recent decision by the Nebraska Public Service Commission on the issue before us listed reasons that yellow page revenues and expenses should be included. In *In re United Tel. Co. of the West*, 12 Pub. Util. Rep. 4th 462 (1975), the Commission stated:

> There can be no doubt that this is a service performed by the company. Telephone equipment and personnel are involved in this area. The directory is supplied by the company to its subscribers. The directory is a piece of telephone property. The equipment and personnel used in relation to yellow pages advertising are also used in providing telephone service. Directory advertising revenues come from telephone subscribers.

12 Pub. Util. Rep. 4th at 465. The case pointed out that "only telephone subscribers are advertisers in the yellow pages and

. . . directory advertising generates telephone calling" and concluded that "no one except the telephone company can adequately carry on the venture." *Id.* at 466. The reasoning of the Nebraska case is valid in the case *sub judice.*

Central points to recent increases in competition for advertising revenue as support for the argument that the yellow page revenue and expenses should not be considered. We cannot find a sufficient demonstration of such competition from the evidence in the record before us.

In testimony by its employee Thomas F. Moncho, Central sought to show competition from other sources. Of the eight exhibits that Moncho offered, seven were city directories published by private companies. He acknowledged that the publishers of those directories charged for them, unlike Central's yellow pages which are distributed free to its customers. Exhibit eight was a yellow page directory for the Raleigh-Durham-Chapel Hill area that was distributed free by a private publisher and paid for by the advertising of the merchants therein.

Elizabeth C. Porter, a staff accountant with the Utilities Commission Public Staff, testified on this issue. She argued that yellow pages are an integral part of telephone service.

> The origination of, the use, and the market for yellow pages are directly related to the telephone itself. To separate the two operations would create an inequitable situation for the ratepayer. The market would continue to be generated by the ratepayer and yet he would receive no benefit from the directory yellow page operations.

Record at 37.

Based on the record and the testimony of Moncho and Porter, we agree with the Commission's conclusion that "there is presently no substantial competition posing a threat to Central's advertising market in North Carolina." Seven city directories that subscribers had to pay for, and a yellow page directory from an area that Central does not service, are not sufficient competition to exclude consideration of Central's yellow page revenue.

Our third basis for upholding the Commission's order is that we are unwilling to substitute our judgment for that of the

Utilities Commission. "[I]f the order of the Commission is supported by any reasonable construction of the evidence it is not to be disturbed because a different interpretation could have been placed upon it." *State ex rel. Utilities Comm'n v. S. Railway Co.,* 267 N.C. 317, 326, 148 S.E. 2d 210, 217, *modified,* 268 N.C. 204, 150 S.E. 2d 337 (1966). This standard of review was followed in the recent *Southern Bell* case. *See* 57 N.C. App. at 496, 291 S.E. 2d at 793.

For the reasons stated herein, the order of the Utilities Commission is

Affirmed.

Judges HILL and JOHNSON concur.