The **CLASSIFIED DIRECTORY SUB-SCRIBERS ASSOCIATION,**
Appellant,

v.

**PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA et al.,**
Appellees.

**No. 20775.**

United States Court of Appeals District of Columbia Circuit.

Argued June 22, 1967.

Decided Sept. 14, 1967.

---

Mr. Stephen L. Gelband, Washington, D. C., for appellant.

Mr. George F. Donnella, Asst. Corp. Counsel for District of Columbia, with whom Messrs. Charles T. Duncan, Corp. Counsel, and C. Belden White II, Asst. Corp. Counsel, were on the brief, for appellee Public Service Commission.

Mr. Robert A. Levetown, Washington, D. C., with whom Messrs. Howard C. Anderson and John P. Barnes, Washington, D. C., were on the brief, for appellee Chesapeake & Potomac Tel. Co.

Before FAHY, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

This is an appeal from a summary judgment granted by the District Court affirming two orders of the Public Service Commission of the District of Columbia dismissing a complaint filed before the Commission by the appellant, Classified Directory Subscribers Association. The complaint urged that the Commission assert comprehensive regulatory jurisdiction—particularly rate-making jurisdiction—over the Classified Telephone Directory published by the Chesapeake and Potomac Telephone Company, a defendant-intervenor before the District Court and an appellee here.

In Order No. 5038 the Commission concluded that it was statutorily authorized to assert jurisdiction over the "Yellow Pages" only when necessary to protect and insure "adequate telephone service and reasonable rates for telephone service." It then found that the basic light-faced classified listings, which all subscribers are entitled to as part of their service, perform a necessary reference function in connection with telephone service and ruled that it had regulatory power over such listings. The Commission also ruled that it could assert jurisdiction over advertising published in the "Yellow Pages" where the rates or practices associated with such advertising "adversely affect the recognized regulated services and rates."

The Commission indicated that discriminatory practices in the sale of "Yellow Pages" advertising would, by their very nature, disrupt overall telephone operations and consequently would be regulable. Similarly, if the Telephone Company's policies or practices rendered the "Yellow Pages" inadequate as a convenient reference to telephone subscribers, or if variations in advertising rates resulted in evasion or frustration of the basic service rates which the Commission was empowered to regulate, then the Commission could, and would, act. But the Commission concluded that absent these special factors it did not have jurisdiction over the advertising published in the Classified Directory because such advertising was not essential to telephone service and did not, in itself, constitute a public utility service or facility within the meaning of the relevant jurisdictional statute. It therefore dismissed that portion of the complaint calling upon the Commission to undertake comprehensive rate regulation of "Yellow Pages" advertising.

The Commission then went on to review the Association's allegations concerning Telephone Company "Yellow Pages" advertising practices of the sort over which the Commission felt it had jurisdiction and found that the allegations of discrimination and unreasonable treatment had no basis in fact. It ordered that the whole of the Association's complaint be dismissed. In Order No. 5053, the Commission denied an application for reconsideration.

The Association appealed these orders to the District Court, claiming that the Commission's jurisdictional decision was wrong as a matter of law. The District Court found that the Commission's construction of the jurisdictional statute was a reasonable one "supported by rational distinctions between advertising and the basic classified listings" and, in effect, affirmed the Commission's orders by granting the defendant-intervenor's cross-motion for summary judgment.[1] This appeal followed. For the reasons developed below we affirm the District Court's summary judgment upholding the orders of the Commission.

■ The only question raised by this appeal is whether, under the relevant statutes, the Public Service Commission has jurisdiction to regulate the rates and practices of the Chesapeake and Potomac Telephone Company with respect to the Washington Yellow Pages Classified Telephone Directory. If there is jurisdiction, it arises from 43 D.C.CODE §§ 301 and 303 (1961). Section 301 states that "[e]very public utility doing business within the District of Columbia is required to furnish service and facilities * * * in all respects just and reasonable. The charge made by any such public utility for any *facility or services* furnished, or rendered, or to be furnished or rendered, shall be reasonable, just, and nondiscriminatory." (Emphasis added.) And Section 303 empowers the Commission to enforce various chapters of the Code, including Section 301. At issue, then, is whether "Yellow Pages" advertising is a public utility "service" or "facility" within the meaning of the statute.

■ Though the District of Columbia Code states explicitly that the term "service" must be interpreted "in its broadest and most inclusive sense," 43 D.C.CODE § 104 (1961), it is clear that not all services offered by a public utility are regulable under Section 301. The statute itself, 43 D.C.CODE § 309 (1961), contemplates that utilities may transact non-utility business, for it authorizes the Commission to require separate accounting for such non-utility services. And many courts and agencies in other jurisdictions have found that activities such as the rental of land and the sale of appliances by utilities are not regulable as public utility services.[2] Indeed, appellant

---

1. Classified Directory Subscribers Ass'n v. Public Service Comm'n of D. C., D.D.C., 274 F.Supp. 261 (November 29, 1966).

2. *See, e. g.,* City Ice & Fuel Co. v. Consolidated Edison Co. of New York, Inc., 29 P.U.R.(n.s.) 193 (1939). *See also* the accounting practices under the Code of

apparently conceded as much in oral argument before the Commission.

The question whether classified advertising is a service under Section 301 is one of first impression for this court. We do not subscribe to appellant's contention that District of Columbia v. Chesapeake & Potomac Tel. Co., 86 U.S. App.D.C. 124, 179 F.2d 814 (1950), is a controlling precedent establishing jurisdiction in the Commission. For though that case held that classified advertising was a service of a public utility within the meaning of a then existing statute which taxed gross receipts "from the sale of public utility commodities and services" within the District, it did not decide that classified advertising was a public utility service subject to total regulation under Sections 301 and 303. It is, we think, significant that, while many state commissions consider revenues from directory advertising as part of a telephone company's gross revenue for purposes of rate-making,[3] in only one state, California,[4] has a regulatory commission or a state court found that the rates of classified advertising are subject to comprehensive regulation.[5] And while some state statutes may be significantly different from our own, others are strikingly similar.[6]

The Telephone Company certainly is in a uniquely advantageous position as a publisher of directory advertising. But its monopoly in that capacity is not so strong as the one it holds as the exclusive provider of telephone services. Even if no one else has yet found it profitable to publish a competitive directory, certainly the availability of other advertising media does exert some competitive restraining influence on Telephone Company pricing. Thus the distinction which the Commission drew between the classified listing, as an integral part of telephone service, and the directory advertising, as primarily a matter of private contract, was not without some reasonable basis. Neither was the distinction drawn between those advertising practices and policies which may be disruptive of basic telephone service itself and those which merely invoke non-discriminatory pricing. Several other jurisdictions have drawn similar lines.[7]

■■ It would seem, then, that there is no "plain meaning" to the words "public utility * * * facility or services" as used in Section 301. The Commission's interpretation conforms to that given comparable statutes by all but one of the commissions or courts which have faced the question; it is consistent with over 50 years of administrative practice here and with several opinions submitted to the Commission by the District of Columbia Corporation Counsel. It is a reasonable, and hence a permissible, interpretation. Even if other constructions

---

Federal Regulations, 47 C.F.R. § 31.-524, 18 C.F.R. § 101.454, 18 C.F.R. § 204.493; and 18 C.F.R. § 101.914, 18 C.F.R. § 204.914 (Supp.1967).

3. *See, e. g.*, Solomon v. Public Service Commission, 286 App.Div. 636, 146 N.Y.S.2d 439 (1955).

4. California Fireproof Storage Co. v. Brundige, 199 Cal. 185, 248 P. 669, 47 A.L.R. 811 (1926).

5. It should be noted that, as the Commission here points out, it too considers revenues from classified advertising as part of the Telephone Company's gross revenues in calculating the return the Company is entitled to from its basic telephone services. Consequently, the telephone rates of the general telephone-using public would increase if the advertising revenues were diminished.

6. For instance, the Pennsylvania statute, which also requires that "service" be interpreted broadly, has been construed not to give jurisdiction over advertising rates. Felix v. Pennsylvania Public Utility Commission, 187 Pa.Super. 578, 146 A. 2d 347 (1958); Steerman v. Bell Telephone Co. of Pennsylvania, 48 P.U.R. (n.s.) 83 (1943).

7. *See, e. g.*, Solomon v. Public Service Commission, *supra* Note 3; Frank v. New York Telephone Company, 34 Misc. 2d 395, 228 N.Y.S.2d 536 (1962). *See also* Videon Corporation v. Burton, Kansas City Ct.App., 369 S.W.2d 264 (1963), where the court held that the state commission did have jurisdiction where unreasonable discrimination among advertisers was alleged.

would also be reasonable, the Commission should be sustained. For "[w]hen faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. 'To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.'" Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). This applies where, as here, the statutory question is one of jurisdiction. Philadelphia Television Broadcasting Co. v. F.C.C., 123 U.S.App.D.C. 298, 359 F.2d 282 (1966).

Affirmed.