STATE OF NORTH CAROLINA *EX REL.* UTILITIES COMMISSION, INTERVENOR-APPELLEE, PUBLIC STAFF OF NORTH CAROLINA UTILITIES COMMISSION, INTERVENOR-APPELLEE, ATTORNEY GENERAL LACY H. THORNBURG, INTERVENOR-APPELLEE, AND THE BOULEVARD FLORIST, INC., COMPLAINANT v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, RESPONDENT, AND BELLSOUTH ADVERTISING & PUBLISHING CORPORATION, RESPONDENT-APPELLANT

No. 195PA89

(Filed 10 May 1990)

**1. Telecommunications § 1.1 (NCI3d)— telephone directory— correct listings—utility function**

Publishing a telephone directory with correct listings in both the white and yellow pages is a public utility function, and the Utilities Commission has jurisdiction over a telephone directory publisher with respect to complaints which arise from the publisher's performance of this function for a utility without regard to whether the publisher itself is a public utility.

**Am Jur 2d, Telecommunications §§ 23, 63, 64.**

**2. Telecommunications § 1.1 (NCI3d); Utilities Commission § 20 (NCI3d)— incorrect yellow pages listing—telephone book publisher—jurisdiction of Utilities Commission**

The Utilities Commission has jurisdiction over a company publishing a telephone directory for a regulated telephone utility with respect to a complaint arising from an incorrect listing in yellow pages advertising and the malfunctioning of equipment installed to direct callers to the correct number.

**Am Jur 2d, Telecommunications §§ 23, 63, 64.**

ON discretionary review of the decision of the Court of Appeals, 93 N.C. App. 260, 377 S.E.2d 772 (1989), affirming in part and reversing in part the 20 December 1987 order of the North Carolina Utilities Commission. Heard in the Supreme Court 12 December 1989.

*North Carolina Utilities Commission Executive Director Robert P. Gruber, by Staff Attorney, Gisele L. Rankin, for Public Staff— North Carolina Utilities Commission.*

*Lacy H. Thornburg, Attorney General, by Lorinzo L. Joyner, Assistant Attorney General.*

STATE EX REL. UTILITIES COMM. v. SOUTHERN BELL

[326 N.C. 522 (1990)]

*Petree Stockton & Robinson, by John T. Allred, for BellSouth Advertising & Publishing Corporation.*

FRYE, Justice.

Two questions are presented for our consideration: (1) whether the North Carolina Utilities Commission (Commission) has the authority to exercise jurisdiction over complaints arising from incorrect listings in yellow pages advertising in a regulated telephone utility's directory; and (2) whether the Commission's finding that BellSouth Advertising and Publishing Company (BAPCO) acted as the agent or alter ego of Southern Bell Telephone and Telegraph Company (Southern Bell) is supported by competent, material, and substantial evidence. We answer the first question in the affirmative and, therefore, reverse the decision of the Court of Appeals to the contrary. We find it unnecessary to answer the second question.

This case arose out of a service complaint proceeding before the Commission instituted by Boulevard Florist, Inc. (Boulevard), a Charlotte florist, against BAPCO and Southern Bell. Prior to 1984, Southern Bell published a telephone directory for the Charlotte area and sold yellow pages advertisements for that directory. On 1 January 1984, pursuant to an agreement with Southern Bell, BAPCO began publishing the Charlotte telephone directory and selling advertisements to be placed in the yellow pages of that directory. Boulevard contracted with BAPCO to place an advertisement in the yellow pages of the 1985 Charlotte telephone directory. Boulevard informed the BAPCO representative that Boulevard would be moving its floral business to another location in Charlotte shortly after the 1985 telephone directory was to be distributed. Boulevard and BAPCO agreed that the number and address for the new location would be published in the yellow pages advertisement and that intercept equipment would be installed to direct callers to the old number until after the move. Boulevard moved into its new location on 3 March 1986, much later than originally planned.

In May, 1986, Boulevard filed a complaint with the Commission. In this complaint Boulevard alleged:

Since the day the 1985 directory was published we have had constant interruption of that transfer recording; i.e., either it did not work at all, and anyone phoning the new number would receive only a ringing sound, with no answer. Or, at

524	IN THE SUPREME COURT

STATE ex rel. UTILITIES COMM. v. SOUTHERN BELL

[326 N.C. 522 (1990)]

times, the recording would come on with a disconnect message telling callers that the number they had reached was no longer in service.

Boulevard further alleged that it reported the problems with the intercept system to both BAPCO and Southern Bell, but the problems were not corrected. Boulevard's complaint asked the Commission to investigate the charges for telephone service and yellow pages advertising which Southern Bell and BAPCO claimed Boulevard still owed them.

In response to Boulevard's complaint, BAPCO filed what it called a "special appearance/response" in which it informed the Commission that "BAPCO, whose principal business is publishing directories, including the sale of advertising therein, is not subject to the jurisdiction of the Commission. Therefore, the Commission has no authority to direct that BAPCO satisfy the demands of Boulevard Florist."

The Commission denied BAPCO's motion to dismiss in an Order Denying Motion to Dismiss, Requiring Answer To Complaint, And Scheduling Hearing filed on 22 December 1986. In that order, the Commission . stated:

> Prior to the formation of BAPCO and the transfer of directory publishing operations from Southern Bell to BAPCO, the Commission exercised jurisdiction over yellow pages complaints from customers of Southern Bell, and Southern Bell accepted and acknowledged the Commission's jurisdiction by filing Answers or Notices of Settlement of the complaints. Although the Commission had no jurisdiction to award monetary damages, such as the loss of business income arising out of yellow pages errors, the Commission's complaint procedure usually resulted in bringing about the same type of relief for the complainants, such as the correction of the advertisements or the cancellation of the charges, in whole or in part, for the advertisements complained of.

The Commission further pointed out that in the Southern Bell rate case, Docket No. P-55, Sub 834, it expressly withheld Commission approval of the contract between Southern Bell and BAPCO in which Southern Bell transferred the responsibility for publishing a directory to BAPCO.

STATE ex rel. UTILITIES COMM. v. SOUTHERN BELL

[326 N.C. 522 (1990)]

On 9 June 1987, an evidentiary hearing on the merits of Boulevard's complaint was held before Hearing Examiner Robert H. Bennink, Jr. The Hearing Examiner made certain findings of fact and conclusions for these findings in a Recommended Order Granting Complaint In Part which was filed on 1 December 1987. The recommended order in part provided:

1. That Southern Bell shall grant Boulevard Florist a three (3) month local service billing adjustment or credit in the amount of $450.72, as an allowance for the service problems experienced by the Complainant during the period of time from July 1985, through March 3, 1986.

2. That Southern Bell and BAPCO shall grant Boulevard Florist a three (3) month billing adjustment or credit applicable to the advertising charges for the 1985 yellow pages ad placed by the Complainant in the Charlotte telephone directory.

This recommended order became a final order on 20 December 1987, because neither BAPCO nor Southern Bell appealed the order to the full Commission. Subsequently, BAPCO appealed the final order to the Court of Appeals. The Court of Appeals held that the Commission erred in asserting jurisdiction over BAPCO and vacated the Commission's order as to BAPCO. *State ex rel. Utilities Commission v. Southern Bell*, 93 N.C. App. at 268, 377 S.E.2d at 777. The Public Staff and the Attorney General petitioned this Court for discretionary review. We allowed these petitions on 27 June 1989.

While this Court and the Court of Appeals have addressed the issue of yellow pages advertising, none of the cases have directly addressed the question in the present case of whether the Commission has jurisdiction over complaints arising from the incorrect listing of a telephone number in the yellow pages. *See State ex rel. Utilities Commission v. Southern Bell*, 307 N.C. 541, 299 S.E.2d 763 (1983) (*Southern Bell*) (whether the revenues and expenses from the yellow pages could be included in rate-making proceedings); *Gas House, Inc. v. Southern Bell Telephone Co.*, 289 N.C. 175, 221 S.E.2d 499 (1976) (*Gas House*) (whether damages in the form of lost profits can be recovered in a civil action arising from an improper listing in the yellow pages when the contract included a limitation of liability clause); and *In re Proposed Assessment v. Carolina Telephone*, 81 N.C. App. 240, 344 S.E.2d 46 (1986) (whether revenues from the yellow pages had to be included in the utility's

franchise tax base). In answering this question, we look first to the language of the statutes found in Chapter 62 of the North Carolina General Statutes which addresses the powers and duties of the Commission.

The general powers of the Commission are set out in Article 3 of our statutes:

> The Commission shall have and exercise such general power and authority to supervise and control the public utilities of the State as may be necessary to carry out the laws providing for their regulation, *and all such other powers and duties as may be necessary or incident to the proper discharge of its duties.*

N.C.G.S. § 62-30 (1989) (emphasis added). Section 62-42 is entitled "Compelling efficient service, extensions of services and facilities, additions and improvements," and it provides in part:

> (a) Except as otherwise limited in this Chapter, whenever the Commission, after notice and hearing had upon its own motion or upon *complaint*, finds:
>
>> (1) *That the service of any public utility is inadequate,* insufficient or unreasonably discriminatory, or
>>
>> . . . .
>>
>> (5) That any *other act is necessary to secure reasonably adequate service* or facilities and *reasonably and adequately to serve the public convenience and necessity,*
>
> the Commission shall enter and serve an order directing that such additions, extensions, repairs, improvements, or additional services or changes shall be made or affected within a reasonable time prescribed in the order.

N.C.G.S. § 62-42(a)(1) and (5) (1989) (emphasis added).

Section 62-73 deals with the Commission's jurisdiction in complaint proceedings such as the one in this case. That statute provides in part:

> Complaints may be made by the Commission on its own motion or by any person having an interest, either direct or as a representative of any persons having a direct interest in the subject matter of such complaint by petition or complaint

STATE EX REL. UTILITIES COMM. v. SOUTHERN BELL

[326 N.C. 522 (1990)]

in writing setting forth *any act or thing done or omitted to be done by any public utility,* including any rule, regulation or rate heretofore established or fixed by or for any public utility in violation of any provision of law or of any order or rule of the Commission, or that any rate, service, classification, rule, regulation or practice is unjust and unreasonable.

N.C.G.S. § 62-73 (1989) (emphasis added).

BAPCO contends, and the Court of Appeals held, that the Commission has no jurisdiction over BAPCO since § 62-73 provides for complaints only against a "public utility"; *State ex rel. Utilities Commission,* 93 N.C. App. at 264, 377 S.E.2d at 774, and BAPCO is not a public utility as that term is defined in N.C.G.S. § 62-3(23)(a)(6).[1] BAPCO's contention places too much emphasis on the term "public utility" as found in the statute, rather than looking at the functions which the public utility is required by statute and by rule of the Commission to perform. In *Southern Bell,* the utility argued that the Commission could not include revenues from the yellow pages advertising in operating statistics for the purpose of ratemaking because publishing the yellow pages is not an essential part of the public utility function of providing telecommunications service. 307 N.C. at 544, 299 S.E.2d at 765. In support of this argument, the utility pointed to the definition of a public utility found in the statutes and argued that the actual transmission of messages across telephone lines does not require the publishing of a yellow pages directory. *Id.* This Court concluded:

Although Southern Bell is technically correct in its contention that actual transmission of messages across telephone lines is not dependent on the existence of yellow pages, such an interpretation of the *public utility function* is far too narrow. Southern Bell's *utility function* is to provide adequate service to its subscribers. To suggest that the mere transmission of messages across telephone lines is adequate telephone service is ludicrous.

*Id.* (emphasis added). In determining the scope of the Commission's authority, *Southern Bell* clearly stands for the propositions that:

---

1. That definition provides that a public utility is a person "[c]onveying or transmitting messages or communications by telephone or telegraph, or any other means of transmission, where such service is offered to the public for compensation." N.C.G.S. § 62-3(23)(a)(6) (1989).

1) the emphasis should be placed on the *public utility function* rather than a literal reading of the statutory definition of "public utility," and 2) the statutory definition should not be read so narrowly as to preclude Commission jurisdiction over a function which is required to provide adequate service to the subscribers.

BAPCO further contends, and the Court of Appeals agreed, that the Commission does not have jurisdiction over BAPCO because the publishing of yellow pages advertising is not a utility function. *State ex rel. Utilities Commission v. Southern Bell*, 93 N.C. App. at 266, 377 S.E.2d at 775. The Public Staff and the Attorney General both contend that the Commission has jurisdiction in this case because publishing the yellow pages is a public utility function. As authority for this proposition, the Public Staff and the Attorney General rely on *Southern Bell*. While the language of *Southern Bell* may lend support to this contention, *see* 307 N.C. at 547, 299 S.E.2d at 767, deciding whether publishing the yellow pages is a public utility function is not necessary for the resolution of this case. We need not decide whether the Commission has jurisdiction over the entire yellow pages operation because the only problem complained of in the present case is poor telephone service because of an incorrect listing.

*Southern Bell* also made the statement that "the yellow pages have never been and are not now regulated by the Utilities Commission."[2] 307 N.C. at 544, 299 S.E.2d at 765. This language does not mean that complaints concerning telephone listings in the yellow pages may not properly come under the jurisdiction of the Commission. If a utility elects to include yellow pages advertising in the directory which it is required to publish, then clearly proper listings in the advertisements in the yellow pages become a part of the utility's "function of providing adequate service" to the public. The public is not well served by listings in the yellow pages or the white pages of the directory which are incorrect or confusing to the consuming public. In the present case, Boulevard's listing

---

2. While the Commission has not attempted any comprehensive regulation of the yellow pages, it has traditionally handled yellow pages complaints. The Commission drew attention to this fact in its order denying BAPCO's motion to dismiss issued on 22 December 1986. This statement, which is cited more fully earlier in this opinion, explained that the Commission had always exercised jurisdiction over yellow pages complaints from customers of Southern Bell. The type of relief typically given was correction of the advertisement or cancellation of all or part of the charges for the advertisement.

was incorrect and confusing to the public because the intercept equipment did not function correctly and caused potential customers to think that the line was busy or that the telephone had been disconnected. Providing a correct telephone listing in the yellow pages as well as in the white pages of the directory is a utility function, and the Commission properly has jurisdiction over complaints which arise from this function such as the complaint in the present case.

[1] While Southern Bell, the regulated public utility, is the entity which is required by tariff to publish the telephone directory, it has contracted with BAPCO to take over this duty and publish the directory. As noted earlier, BAPCO contends that it is not subject to the complaint jurisdiction of the Commission because BAPCO is not a "public utility" as defined by the statute. We have already concluded that publishing the directory, which must include proper telephone listings in both the white pages and the yellow pages, is a utility function which comes under the jurisdiction of the Commission. Since publishing the directory with correct listings is a public utility function, and since BAPCO is performing this function for Southern Bell, the Commission has jurisdiction over BAPCO to handle any complaints which arise from BAPCO's performance of this function without regard to whether BAPCO itself is a public utility. Therefore, we need not address the Court of Appeals' holding that BAPCO is not the alter ego or agent of Southern Bell and for that reason is not subject to the jurisdiction of the Commission.

[2] The real issue in this case is whether the Commission has complaint jurisdiction over a company publishing, on behalf of a regulated telephone utility, a telephone directory which also contains paid advertising. Without deciding whether the Commission has general regulatory jurisdiction over yellow pages advertising, we conclude that the Commission has jurisdiction over complaints concerning incorrect telephone number listings in the telephone directory even when the regulated utility has delegated to another company the public utility function of publishing its directory which also includes paid advertising. Providing a correct telephone listing is part of providing "reasonably adequate service" as required by N.C.G.S. § 62-42(a)(5).

We find that our conclusions are not inconsistent with those of other jurisdictions. In *Classified Directory Subscribers Ass'n*

*v. Public Serv. Comm'n*, 383 F.2d 510 (D.C. Cir. 1967) (*Classified Directory*), the Public Service Commission of the District of Columbia had been asked to assert comprehensive regulatory jurisdiction over the Classified Telephone Directory published by a public utility. *Id.* at 511. In its order, "the Commission concluded that it was statutorily authorized to assert jurisdiction over the 'Yellow Pages' only when necessary to protect and insure 'adequate telephone service and reasonable rates for telephone service.' " *Id.* The Commission did claim that it could assert jurisdiction over "advertising published in the 'Yellow Pages' where the rates or practices associated with such advertising 'adversely affect the recognized regulated services and rates.' " *Id.* In its opinion, the District of Columbia Circuit Court of Appeals added that the Commission claimed jurisdiction "if the Telephone Company's policies or practices rendered the 'Yellow Pages' inadequate as a convenient reference to telephone subscribers." *Id.* at 512. The Commission did not claim jurisdiction over "advertising published in the Classified Directory because such advertising was not essential to telephone service and did not, in itself, constitute a public utility service or facility." *Id.* The United States District Court for the District of Columbia granted defendant-intervenor's cross-motion for summary judgment, effectively affirming the Commission's orders, and the Circuit Court of Appeals affirmed. *Id.*

In the present case, as in *Classified Directory*, the Commission is asserting jurisdiction only over complaints which involve a disruption of the "reasonably adequate service" which the utility must provide the public. In the language of *Classified Directory*, the combination of the directory listing and the faulty intercept equipment in the present case rendered the directory "inadequate as a convenient reference to telephone subscribers" because it essentially made incorrect the number listed in every section of the directory.

In its brief, BAPCO contends that the majority rule in the United States is that yellow pages advertising is not regulated by state utilities commissions. BAPCO cites several cases for this proposition: *Modern Equip. Corp. v. Puerto Rico Tel. Co.*, 440 F. Supp. 1242 (D.P.R. 1977) (yellow pages a matter of private contract, not public service); *Pride v. Southern Bell Tel. and Tel. Co.*, 244 S.C. 615, 138 S.E.2d 155 (1964) (upholding a limitation of liability clause in a yellow pages contract); *A-ABC Appliance of Texas, Inc. v. Southwestern Bell Tel. Co.*, 670 S.W.2d 733 (Tex. App.

1984) (directory publisher was free to contract privately and refuse ad that violated its standards); and *Mountain States Tel. and Tel. Co. v. Public Serv. Comm'n*, 745 P.2d 563 (Wyo. 1987) (held unlawful the Wyoming Public Service Commission's attempt to require Mountain Bell to rescind the transfer of its publishing assets to a related corporation). *Classified Directory* is included in this list of citations, and BAPCO cites it for the holding that yellow pages advertising is not a public utility "service" or "function" within the meaning of the District of Columbia statutes. BAPCO does not discuss the part of that decision which upheld the Commission's order allowing the Commission jurisdiction if the company's "policies or practices rendered the 'Yellow Pages' inadequate as a convenient reference to telephone subscribers." *Classified Directory*, 383 F.2d at 512. None of the other cases cited by BAPCO make this distinction, and all seem to focus on the advertisements in the yellow pages rather than whether the yellow pages serve as a correct reference for telephone numbers. Since it is unnecessary for us to decide in this case whether the Commission has general regulatory jurisdiction over yellow pages advertising, the cases cited by BAPCO, with the exception of *Classified Directory*, are not directly applicable to the present case.

The Commission in *Classified Directory* seemed to be making the same distinction which we are making in this case and which the Public Staff made in its argument. During oral argument, the Public Staff made it clear that the Commission was not seeking to assert general regulatory jurisdiction over the entire yellow pages operation, but rather they seek to assert jurisdiction to ensure the customers a remedy if their numbers are listed incorrectly. The Public Staff contends that the Commission is the proper place for such complaints because the Commission can grant certain remedies, such as making the utility send out a correction in the listing, which a court could not ordinarily do.

We agree with the Public Staff that the Commission is the proper place for complaints of this nature. We conclude that our statutes support this jurisdiction in the mandate to the telephone utilities that they provide "reasonably adequate service." N.C.G.S. § 62-42(a)(5). Providing a telephone directory is a public utility function, and complaints arising from incorrect telephone number listings in the directory, whether in the white pages or the yellow pages, come under the jurisdiction of the Commission because providing incorrect telephone numbers is disruptive to the public utili-

ty service which the directory is to provide. This jurisdiction continues even though the public utility transfers its duty to publish the directory to another entity.

For the foregoing reasons, we hold that the Court of Appeals erred in vacating the Commission's 20 December 1987 order as to BAPCO. Therefore, the decision of the Court of Appeals reversing the Commission's assertion of jurisdiction over BAPCO in this case is reversed.

Reversed.