IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-424

Filed 15 October 2024

North Carolina Utilities Commission, No. A-41, SUB 21

STATE OF NORTH CAROLINA ex rel. UTILITIES COMMISSION; VILLAGE OF BALD HEAD ISLAND, Complainant; PUBLIC STAFF-NORTH CAROLINA UTILITIES, Intervenor; BALD HEAD ISLAND CLUB, Intervenor; BALD HEAD ASSOCIATION, Intervenor,

v.

BALD HEAD ISLAND TRANSPORTATION, INC., Respondent; BALD HEAD ISLAND LIMITED, LLC, Respondent; and SHARPVUE CAPITAL, LLC, Intervenor.

Appeal by Respondents from order entered 30 December 2022 by the North Carolina Utilities Commission. Heard in the Court of Appeals 29 November 2023.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Amanda S. Hawkins, Marcus W. Trathen, and Jo Anne Sanford, for complainant-appellee.*

*Fox Rothschild LLP, by Kip D. Nelson, M. Gray Styers, Jr., and Bradley M. Risinger, for respondents-appellants.*

*Maynard Nexsen PC, by David P. Ferrell, for intervenor-appellant.*

MURPHY, Judge.

The Commission may exercise all powers of a court of general jurisdiction over matters pertaining to public utilities and their rates, services, and operations. Therefore, so long as the Commission's jurisdiction is properly invoked by a justiciable controversy, the Commission is empowered to enter a declaratory judgment determining the public utility status of unregulated entities.

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

The Village's request for determination of BHIL's public utility status, by and through its Parking and Barge Operations' relationships to the regulated utility BHIT's Ferry Operations, was sufficient to confer jurisdiction upon the Commission, as the Village alleged an actual, genuine controversy existed concerning the parties' respective rights and obligations under the Public Utilities Act due to the Village's current use of the Parking, Barge, and Ferry Operations. However, the Village's request was insufficient to confer the Commission's jurisdiction to determine its unreached contention that BHIL operates its Barge Operations as a per se utility transporting persons or household goods for compensation, as the Village's alleged use of the Barge Operations is limited to transporting municipal materials and equipment.

The Commission may not extend its regulatory authority or jurisdiction over any industry or enterprise not subject to its jurisdiction under the Public Utilities Act. The Commission erred in concluding that BHIL's non-utility Parking and Barge Operations are ipso facto subject to its regulatory authority as services ancillary to BHIT's utility Ferry Operations, as any ancillary service per se must be furnished by a public utility.

The Commission properly concluded that it may exercise regulatory authority over BHIL's sale of its Parking Operations because the effect created by utilizing the parent company BHIL's unregulated Parking Operations to service its wholly-owned subsidiary company BHIT's regulated utility Ferry Operations on the utility ferry's

2

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

rates and services subjects BHIL to treatment as a public utility on these facts. We affirm the Commission's order as modified within this opinion as to the Parking Operations and uphold its provision that BHIL shall not sell, assign, pledge, or transfer the Parking Operations without Commission approval.

The record contains no evidence that the relationship between BHIL as parent and owner of the non-utility Barge Operations and BHIT as wholly-owned subsidiary and owner of the utility Ferry Operations affects the rates and services of the regulated utility ferry, and the Commission has no authority to regulate BHIL's sale of its non-utility Barge Operations and assets. We reverse the Commission's order as to the Barge Operations without remand, as the Village has no legal interest in its unreached contention that BHIL through its Barge Operations is per se a public utility.

## <u>BACKGROUND</u>

This case is before us on appeal from an order of the State of North Carolina Utilities Commission ("Commission") determining that the Southport parking lot facilities ("Parking Operations") and freight barge business ("Barge Operations") owned and operated by Respondent Bald Head Island Limited, LLC, ("BHIL") are subject to its regulatory authority through the Operations' relationships to the ferry and tram services ("Ferry Operations") owned and operated by BHIL's wholly-owned subsidiary, Respondent Bald Head Island Transportation, LLC, ("BHIT"), a regulated

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

public utility. Before turning to the procedural background of the case before us, we discuss the relevant underlying factual circumstances.

**A. The Parties**

Petitioner Village of Bald Head Island ("Village") is a municipality coterminous with Bald Head Island ("Island"). The Island is accessible only by boat, and the Village heavily regulates the use of private automobiles on the Island. Pursuant to N.C.G.S. § 62-3(a)(4), Respondent BHIT is a public utility that owns and operates a passenger ferry service to and from the Island and a tram service on the Island. The ferry and tram operate together, and purchase of a ferry ticket includes tram service on the Island. The parties do not dispute that BHIT has been subject to regulation by the Commission since 1995, when it received a common carrier certificate to operate the ferry and tram services as a public utility.

BHIT currently operates its ferry service between a mainland terminal located in Southport ("Deep Point Terminal") and a terminal located on the Island ("Island Terminal"). BHIT relocated its Ferry Operations' mainland terminal from Indigo Plantation to the Deep Point Terminal in 2009. BHIL owns and operates the Deep Point Terminal facilities and the Island Terminal facilities and leases both terminal buildings to the regulated utility BHIT. BHIL is the parent company of BHIT, its wholly-owned subsidiary.

In addition to the terminal facilities, BHIL owns and operates parking lot facilities, which are located adjacent to the Deep Point Terminal facilities. BHIL

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

charges a fee to park in its Southport parking facilities for more than two hours and offers an annual parking pass to passengers of BHIT's ferry and members of the general public. BHIL's Parking Operations currently provide the only public parking near the ferry.

BHIL also owns a tugboat and freight barge, which it operates between the same terminal facilities as BHIT's passenger ferry. BHIL provides the public with use of its freight barge to transport cargo vehicles carrying materials and supplies between the Deep Point Terminal and the Island Terminal. The Barge Operations are currently the exclusive public means of transporting goods to and from the Island. BHIL requires that all items be transported inside of a vehicle and charges a fee dependent upon the size of the space that the boarding vehicle will occupy on the barge deck. A total number of twelve people may travel inside the cab of their vehicles on the barge at one time, and BHIL charges no additional fee for vehicle passengers. BHIT maintains and services BHIL's Barge Operations at the Deep Point Terminal. The tugboat and barge are subject only to safety inspection and regulation by the United States Coast Guard.

Although BHIL's Parking and Barge Operations have each serviced the Island for nearly thirty years, the common carrier certificate issued to BHIT in 1995 made no reference to either operation, and neither the barge nor the parking facilities have previously been regulated by the Commission.

**B. The Order**

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

On 16 February 2022, Petitioner Village filed a *Complaint and Request for Determination of Public Utility Status* with the Commission. In its complaint, the Village alleged that "BHIL [had] expressed its intention to divest itself of the ferry and related transportation assets, including the [Deep Point Terminal], ferries, Barge [Operations], on-island tram, and Mainland Parking [Operations][,]" and that the Village itself, amongst others, had emerged as a "potential purchaser[] of the assets[.]" The Village claimed that BHIL had solicited bids from several private entities with expressed willingness "to sell the assets in piece parts at a higher total valuation"; and the Village expressed concern that, if BHIL were permitted to engage in the unregulated sale of its assets, a private purchaser of the Parking and Barge Operations could operate as an "unregulated monopolist" with the power to "control and dictate[] rates, terms and conditions for indispensable services to captive ferry passengers who must have parking if they are to ride the ferry and [to] Islanders who have no alternative to the Barge for transporting household goods to the Island."

The Village alleged that "in the absence of action by the Commission, assets that are critical, indispensable components of BHIT's transportation utility operations may be sold to third parties outside of the Commission's authority and control based upon the potential that each system sold individually would summon a higher total valuation." To prevent this issue from arising, the Village requested that the Commission investigate and determine the public utility status of BHIL and its Barge and Parking Operations. The Village further requested that the Commission

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

enter an order determining (1) that the Parking Operations are subject to its regulatory authority as an essential component of BHIT's public utility ferry service and (2) that the Barge Operations are subject to its regulatory authority as a common carrier service. In the alternative, the Village requested that the Commission determine that BHIL's ownership and operation of the Parking and Barge Operations subject it to treatment as a public utility and, therefore, regulation by the Commission. The Commission opened a docket on the Village's complaint and ordered BHIL and BHIT (collectively, "Respondents") to file an answer.

On 15 March 2022, Bald Head Island Club ("BHI Club") petitioned the Commission to intervene and become a party to the docket. On 18 March 2022, the Commission granted BHI Club's petition to intervene. On 30 March 2022, Respondents filed a response, answer, and motion to dismiss the Village's complaint, alleging that the complaint did not confer jurisdiction on the Commission; the complaint impermissibly sought an advisory declaration with no justiciable issue; the Commission had no statutory authority to assert jurisdiction over BHIL's Parking and Barge Operations; the ferry rates were established without any inclusion of the Parking and Barge Operations; the issues raised were not ripe for decision; and the Barge Operations are not a common carrier as a matter of law. The Village filed its reply on 22 April 2022.

On 17 May 2022, SharpVue Capital, LLC, BHIL, and BHIT entered into an asset purchase agreement whereby SharpVue would acquire, in pertinent part,

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

BHIL's Parking and Barge Operations and BHIT's Ferry Operations. On 17 June 2022, the Commission entered an *Order Scheduling Hearing and Establishing Procedures* in the present case. On 8 July 2022, the Village petitioned the Commission to join SharpVue as a necessary party to the proceeding. On 13 July 2022, Bald Head Island Association ("Association") petitioned to intervene and become a party to the docket as well. On 20 July 2022, the Commission granted the Association's petition to intervene, and, on 1 August 2022, the Commission granted the Village's petition to join SharpVue Capital.

On 16 August 2022, the Commission denied Respondents' motion to dismiss the Village's complaint. On 10 October 2022, the Commission presided over a hearing in the matter; and, on 30 December 2022, the Commission entered an order determining that BHIL's Parking and Barge Operations are subject to its regulatory authority and cannot be sold without prior Commission approval.

Specifically, the Commission concluded that the Parking and Barge Operations are "integral component[s] of the ferry service and the overall transportation system operations that serve the Island[]" and, pursuant to N.C.G.S. §§ 62-2(b) and 62-3(27), are each subject to its regulatory authority as ancillary services or facilities of the regulated utility, BHIT. *See* N.C.G.S. § 62-2(b) (2023) (empowering Commission to regulate public utilities and their rates, operations, and services in accordance with N.C.G.S. § 62-1, *et seq.*, the "Public Utilities Act"), N.C.G.S. § 62-3(27) (2023) (defining "service" as "any service furnished by a public utility, including any commodity

8

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

furnished as a part of such service and any ancillary service or facility used in connection with such service"). The Commission further concluded that BHIL's Parking Operations were subject to its regulatory authority pursuant to N.C.G.S. § 62-3(23)(c) because they are owned and operated by BHIT's parent company and "impact the rates or services of the regulated utility, BHIT." *See* N.C.G.S. § 62-3(23)(c) (2023) (including within the definition of "public utility" "all persons affiliated through stock ownership with a public utility doing business in this State as a parent or subsidiary corporation to such an extent that the Commission shall find that such affiliation has an effect on the rates or service of such public utility"). The Commission therefore concluded that "[t]he sale or transfer of the Parking and Barge Operations without prior Commission approval is prohibited by N.C.G.S. § 62-111(a)."

Ultimately, these conclusions led the Commission to order that the Parking and Barge Operations "are subject to the Commission's jurisdiction and regulatory authority;" that the parties are not required to file a general rate case at this time; that the Parking and Barge Operations may continue to operate with their current rates, services, and operations pending further order by the Commission; and "[t]hat BHIL shall not sell, assign, pledge, or transfer the Parking or Barge Operations without prior Commission approval." Respondents appealed.

## ANALYSIS

9

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

We review a decision by the Utilities Commission pursuant to N.C.G.S. § 62-94:

> [We] may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or [we] may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> > (1) In violation of constitutional provisions.
> >
> > (2) In excess of statutory authority or jurisdiction of the Commission.
> >
> > (3) Made upon unlawful proceedings.
> >
> > (4) Affected by other errors of law.
> >
> > (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted.
> >
> > (6) Arbitrary or capricious.

N.C.G.S. § 62-94(b) (2023). "Upon any appeal, the rates fixed or any rule, finding, determination, or order made by the Commission under this Chapter is prima facie just and reasonable." N.C.G.S. § 62-94(e) (2023). We may reverse the Commission's decision only upon "strict application of the six criteria enumerated in N.C.G.S. § 62-94(b)":

> Read contextually, therefore, the requirements that substantial rights have been prejudiced, that error must be prejudicial and that actions of the Commission are presumed just clearly indicate that judicial reversal of an order of the Utilities Commission is a serious matter for the reviewing court which can be properly addressed only by

10

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

> strict application of the six criteria which circumscribe
> judicial review.

*State ex rel. Utils. Comm'n v. Bird Oil Co.*, 302 N.C. 14, 20 (1981) (emphasis and marks omitted). Respondents, as appellants, bear the burden of demonstrating on appeal that the Commission erred and that this error was prejudicial to their substantial rights. *See id.* at 25.

We review the Commission's findings of fact to determine whether they are supported by "competent, material, and substantial evidence[.]" *State ex rel. Utils. Comm'n v. Cooper*, 368 N.C. 216, 223 (2015). Unchallenged findings of fact are deemed supported by such evidence and are consequently binding on appeal. *Id.* We review the Commission's conclusions of law to determine if they are supported by its findings of fact. *State ex rel. Utils. Comm'n v. Eddleman*, 320 N.C. 344, 352 (1987); *see also Coble v. Coble*, 300 N.C. 708, 714 (1980) ("Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken . . . in logical sequence . . . .").

On appeal, Respondents contend that the Commission's unlawful expansion of its jurisdiction to assert broad authority over BHIL's non-utility businesses substantially prejudiced their rights; that the Commission's findings of fact were unsupported by competent, material, and substantial evidence; and that the Commission erred as a matter of law in concluding that it could exercise authority

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

over BHIL's Parking and Barge Operations because of their relationships to BHIT's Ferry Operations, even though only BHIT provides a regulated utility service.

## A. Commission's Jurisdiction Over Village's Complaint

As a preliminary matter, we address Respondents' argument that, even if we determine that the Commission properly concluded it may exercise its regulatory authority over the Parking and Barge Operations, its jurisdiction to hear this matter was not properly invoked by the Village's complaint.

By its plain language and designation as "Complaints against public utilities[,]" N.C.G.S. § 62-73 governs when a complaint may be properly brought *against a public utility*. N.C.G.S. § 62-73 provides that

> [c]omplaints may be made by the Commission on its own motion or by any person having an interest, either direct or as a representative of any persons having a direct interest in the subject matter of such complaint by petition or complaint in writing setting forth any act or thing done or omitted to be done by any public utility, including any rule, regulation or rate heretofore established or fixed by or for any public utility in violation of any provision of law or of any order or rule of the Commission, or that any rate, service, classification, rule, regulation or practice is unjust and unreasonable. Upon good cause shown and in compliance with the rules of the Commission, the Commission shall also allow any such person authorized to file a complaint, to intervene in any pending proceeding. The Commission, by rule, may prescribe the form of complaints filed under this section, and may in its discretion order two or more complaints dealing with the same subject matter to be joined in one hearing. Unless the Commission shall determine, upon consideration of the complaint or otherwise, and after notice to the complainant and opportunity to be heard, that no reasonable ground

12

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

> exists for an investigation of such complaint, the Commission shall fix a time and place for hearing, after reasonable notice to the complainant and the utility complained of, which notice shall be not less than 10 days before the time set for such hearing.

N.C.G.S. § 62-73 (2023).

Respondents contend that, pursuant to N.C.G.S. § 62-73, the Village's complaint against BHIL and BHIT was insufficient to confer subject matter jurisdiction upon the Commission because it contained "no allegations that the current ferry service, rules, regulations, or rate structure . . . are unjust or unreasonable" and no allegations "setting forth any act or thing done or omitted to be done by the regulated ferry." Respondents therefore allege that the Commission's purported exercise of jurisdiction over the matter was "illusory." Even if Respondents' argument is taken as true, the Village's failure to invoke the Commission's *complaint* jurisdiction over this matter does not ipso facto divest the Commission of *all* jurisdiction over this matter.

**1. Commission's Power to Declare Utility Status**

"The question whether or not a particular company or service is a public utility is a judicial one which must be determined as such by a court of competent jurisdiction." *State ex rel. Utilities Comm'n v. N.C. Waste Awareness and Reduction Network*, 255 N.C. App. 613, 615-16 (2017), *aff'd*, 371 N.C. 108 (2018) (quoting *State ex rel. N.C. Utils. Comm'n v. New Hope Rd. Water Co.*, 248 N.C. 27, 30 (1958)). Pursuant to N.C.G.S. § 62-60,

13

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

> [f]or the purpose of conducting hearings, making decisions and issuing orders, and in formal investigations where a record is made of testimony under oath, the Commission shall be deemed to exercise functions judicial in nature and shall have all the powers and jurisdiction of a court of general jurisdiction as to all subjects over which the Commission has or may hereafter be given jurisdiction by law. The commissioners and members of the Commission's staff designated and assigned as examiners shall have full power to administer oaths and to hear and take evidence. The Commission shall render its decisions upon questions of law and of fact in the same manner as a court of record. A majority of the commissioners shall constitute a quorum, and any order or decision of a majority of the commissioners shall constitute the order or decision of the Commission, except as otherwise provided in this Chapter.

N.C.G.S. § 62-60 (2023). Under N.C.G.S. § 1-253, the "Declaratory Judgment Act,"

> [c]ourts of record within their respective jurisdiction shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

N.C.G.S. § 1-253 (2023). When read together, N.C.G.S. §§ 62-60 and 1-253 empower the Commission to "declare rights, status, and other legal relations" as to subjects over which it has been given jurisdiction by law. *Id.*; *see* N.C.G.S. § 62-60 (2023).

The Public Utilities Act grants the Commission regulatory jurisdiction over "public utilities generally[]" and "their rates, services and operations[.]" N.C.G.S. § 62-2(b) (2023). Therefore, the Commission may exercise all powers and jurisdiction of a court of general jurisdiction—including the power to enter a declaratory

14

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

judgment—over matters pertaining to public utilities and their rates, services, and operations. Here, the Village specifically requested an "investigation and determination of utility status" and "a declaratory judgment pursuant to [N.C.G.S.] § 1-253." The declaration of whether BHIL and its Parking and Barge Operations are public utilities is a matter subject to the Commission's jurisdiction, so long as that jurisdiction is properly invoked by a justiciable controversy. *See N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 447 (1974) ("[A]n action for a declaratory judgment will lie only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute.").

**2. Justiciability**

Although "[i]t is not necessary for one party to have an actual right of action against another for an actual controversy to exist which would support declaratory relief[,]" "it is necessary that . . . litigation appears to be unavoidable." *Id.* "The purpose of the Declaratory Judgment Act is to settle and afford relief from uncertainty concerning rights, status and other legal relations . . . ." *Id.* at 446. Therefore, "any claims, assertions, challenges, records, or adverse interests" which "cast[] doubt, insecurity, and uncertainty upon the [petitioner's] rights or status . . . establish a condition of justiciability." *Id.* at 451.

"[W]hen a litigant seeks relief under the declaratory judgment statute, he must set forth in his pleading all facts necessary to disclose the existence of an actual controversy between the parties to the action with regard to their respective rights

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

and duties in the premises." *Id.* at 447. The Village requested that the Commission determine the public utility status of BHIL and alleged that

> [a] dispute has arisen between and among the parties concerning the regulatory nature of the parking and barge assets which are essential to, and a component of, the regulated public utility ferry service provided by BHIT. This dispute takes on particular importance now because BHIL has publicly stated both its intention to seek third party, private buyers of the transportation assets and its willingness to sell the assets comprising the transportation system in parts. Given those present efforts to dispose of these critical assets, it is important that the Commission resolve questions concerning the regulated nature of services being provided to the public with the parking and barge assets to ensure that the public interest in utility service is protected.

The Village further alleged:

> A real and present controversy exists over the nature of the Parking Facilities and Barge assets, whether they are subject to the jurisdiction of the Commission, and, accordingly, whether they are integral components of the ferry utility operation or whether they can be sold, transferred, or otherwise monetized as monopoly service assets outside the control and jurisdiction of the Commission.

In *State ex rel. Utils. Comm'n v. Cube Yadkin Generation LLC*, 279 N.C. App. 217, 221 (2021), we held that the petitioner Cube failed to invoke the Commission's jurisdiction over its request for a judgment declaring that the operations described in its proposed business plan would not cause it to be a public utility because they would fall under a statutory exemption for landlord/tenant relationships. In its request, Cube alleged that it had devised a business plan whereby it would purchase and

16

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

redevelop an area of land, lease that land to commercial tenants, and supply those tenants with electricity from its nearby hydroelectric generation facilities. *Id.* at 218-19. However, at the time of its request, Cube had no present ownership interest in the land, had not entered into any leasing contracts with tenants, and had not entered into any contract to acquire the land. *Id.* at 221. We held that "Cube ha[d] no present interest in the resolution of its question" and "[was] not in a realized adversarial position to [the intervenor] Duke[,]" but merely "owns and operates four hydroelectric facilities which *could* be used to provide electric energy in ways that *would* provoke an adversarial relationship with Duke." *Id.* We reasoned that "the controversy that Cube has asked our Courts and the Commission to decide simply does not yet exist[]" as Cube "has no legal duties that demand it conduct acts in compliance which would unavoidably lead to litigation with Duke." *Id.* at 221-22.

"[T]he object of a declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated." *Perry v. Bank of America, N.A.*, 251 N.C. App. 776, 779 (2017). In *Perry*, the petitioners sought a declaration of whether they were "legally obligated to pay [Bank of America] balances on lines of credit which they contend are the result of fraud[]" "without having to wait for the bank to foreclose on their home when they refuse to pay." *Id.* at 779-80, 781. We held that "[t]his [was] an actual, genuine controversy concerning the parties' respective legal rights and obligations under the contracts governing the lines of credit." *Id.* at 780.

17

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

At the time that the Village filed its request for determination of BHIL's utility status, BHIL had not entered into any contract to sell its Parking and Barge Operations. As in *Cube*, that BHIL *could* enter into such a contract with a private purchaser, who *could* monetize those assets as an unregulated monopoly, does not create a present controversy between the Village and Respondents. Nevertheless, the Village's allegations as to Respondents' *current* operations and their relationship to the Village are sufficient to show a real, existing controversy between the parties.

The Village alleged that BHIT's Ferry Operations and BHIL's Parking Operations "are inextricably related and in fact exist in tandem" presently "as one de facto regulated service[]" because "[t]he ability to operate the ferry in service to the public, which is the essence of its regulated status under Chapter 62, is dependent upon the ability [of] the public to park at the ferry terminal under reasonable terms and conditions." BHIT's ferry is currently the exclusive public "means to transport Village personnel who provide essential municipal services[]" to the Island, and "[t]here is no reasonable substitute parking service" to BHIL's Parking Operations that is available to ferry travelers—including Village personnel—at this time. The Village further alleged that BHIL's Barge Operations are currently its "only [public] means to transport and provide essential municipal . . . materials and equipment . . . ."

"[A]s the Island's municipal government and regular user of the ferry, parking and Barge for its employees and operations," the Village alleged that it "has a direct

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

and substantial interest in ensuring the ongoing and continued availability of" these services "on reasonable terms and conditions." As a consumer who contends that it is necessarily dependent upon the Parking and Barge Operations "for its employees and operations," the Village has an interest in determining whether the Commission may exercise its authority over these operations by and through their relationships to the regulated utility Ferry Operations to "promote adequate, reliable and economical utility service." N.C.G.S. § 62-2(a)(3) (2023).

The Village sought a declaration that BHIL is subject to the Commission's regulatory authority as the operator of services integral to BHIT's regulated utility Ferry Operations. This interest is adversarial to Respondents' interest in continuing to own and operate their assets without constraint, including their ability to freely alienate those assets if they so choose. As in *Perry*, the Village's petition contains an actual, genuine controversy concerning the parties' respective rights and obligations pursuant to the Public Utilities Act, and this controversy establishes a condition of justiciability sufficient to confer jurisdiction upon the Commission for the purpose of declaratory relief.

"It is not required for purposes of jurisdiction that [the Village] shall allege or show that [its] rights have been invaded or violated by [BHIL or BHIT], or that [Respondents] have incurred liability to [it], prior to the commencement of the action." *Carolina Power & Light Co. v. Iseley*, 203 N.C. 811, 820 (1933). The Village has "allege[d] in its complaint . . . that a real controversy, arising out of [the parties']

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

opposing contentions as to their respective legal rights and liabilities . . . under a statute . . . exists between or among the parties," and that an order declaring the utility status of BHIL and its Parking and Barge Operations "will make certain that which is uncertain and secure that which is insecure." *Id.*

In addition to seeking a determination that the Barge Operations are subject to Commission jurisdiction through their relationship to the regulated utility Ferry Operations, the Village sought a determination that BHIL is subject to the Commission's regulatory authority through its Barge Operations as a per se public utility pursuant to N.C.G.S. §§ 62-3(6) and 62-3(23)(a)(4). However, the Village's allegations that the Barge Operations are currently its "only [public] means to transport and provide essential municipal . . . materials and equipment[,]" even if true, are not sufficient to establish justiciability of this issue. The Village must have a present interest in the Barge Operations' purported per se utility function under N.C.G.S. §§ 62-3(6) and 62-3(23)(a)(4); that is, the Village must have a present interest in continued use of the Barge Operations for its utility purpose of "[t]ransporting *persons or household goods* . . . for the public for compensation[.]" N.C.G.S. § 62-3(23)(a)(4) (2023) (emphasis added). By its own allegations, the Village's current use of the Barge Operations—to transport "essential municipal . . . materials and equipment[]"—would *not* establish a condition of justiciability under N.C.G.S. § 62-3(23)(a)(4), as municipal materials and equipment are de facto neither "persons" nor "household goods." *Id.*

20

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

For the reasons explained above, the Commission had jurisdiction over the Village's complaint to determine whether BHIL is subject to Commission regulation through its Parking or Barge Operations' relationship to BHIT's Ferry Operations, but not to determine whether BHIL, through its Barge Operations, is per se a public utility.

"Nothing in [the Public Utilities Act] shall be construed to imply any extension of Utilities Commission regulatory jurisdiction over any industry or enterprise that is not subject to the regulatory jurisdiction of said Commission." N.C.G.S. § 62-2(b) (2023). Therefore, "[t]he dispositive issue on appeal is whether the Commission correctly determined that [BHIL] was operating[,]" and to what extent it was operating, as a public utility through its Parking and Barge Operations such that the Commission could prohibit BHIL from selling, assigning, pledging, or transferring the Parking or Barge Operations without prior Commission approval. *N.C. Waste Awareness and Reduction Network*, 255 N.C. App. at 615.

### B. Commission's Regulatory Authority

The parties do not dispute that, under N.C.G.S. § 62-3(23)(a)(4), BHIT is a public utility subject to Commission jurisdiction and regulatory authority through its Ferry Operations:

> a. "Public utility" means a person, whether organized under the laws of this State or under the laws of any other state or country, now or hereafter owning or operating in this State equipment or facilities for:

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

. . . .

> 4. Transporting persons or household goods by motor vehicles or any other form of transportation for the public for compensation[] . . . .

N.C.G.S. § 62-3(23)(a)(4) (2023). However, Respondents challenge the Commission's conclusion that BHIL is also subject to its jurisdiction and regulatory authority through its Parking and Barge Operations.

The Commission acknowledged in its order that it "has no jurisdiction over BHIL or its certain operations unless those operations fall within the meaning of the Public Utilities Act." However, the Commission ultimately concluded that BHIL, through both its Parking Operations and its Barge Operations, is subject to its regulatory authority over "public utilities generally[]" and "their rates, services and operations[,]" N.C.G.S. § 62-2(b) (2023), within the statutory meaning of "service":

> As used in this Chapter, unless the context otherwise requires, the term:
>
> . . . .
>
> (27) "Service" means any service furnished by a public utility, including any commodity furnished as a part of such service and any ancillary service or facility used in connection with such service.

N.C.G.S. § 62-3(27) (2023).

The Commission further concluded that, pursuant to N.C.G.S. § 62-3(23)(c), BHIL is subject to its regulatory authority as the parent company of BHIT through

Vill. of Bald Head Island, et al. v. Bald Head Island Transp., Inc., et al.

*Opinion of the Court*

only its Parking Operations, because these Parking Operations have an effect on BHIT's utility ferry's rates or service:

> The term "public utility" shall include all persons affiliated through stock ownership with a public utility doing business in this State as a parent corporation or subsidiary corporation to such an extent that the Commission shall find that such affiliation has an effect on the rates or service of such public utility.

N.C.G.S. § 62-3(23)(c) (2023).

The Commission relied upon different factual circumstances and legal reasoning in concluding that the Parking and Barge Operations are subject to its regulatory authority, and we address these conclusions separately.

**1. Parking Operations**

The Commission first determined that BHIL's Parking Operations are subject to its regulatory authority over "any service furnished by a public utility, including . . . any ancillary service or facility used in connection with [a public utility] service[]" because they are necessary, and therefore ancillary, to BHIT's ferry service. N.C.G.S. § 62-3(27) (2023). Standing alone, however, this finding is insufficient to support the Commission's conclusion that it may exercise regulatory authority over the Parking Operations. N.C.G.S. § 62-3(27) explicitly provides that, even if BHIL's Parking Operations or parking facilities operate in service of the regulated utility BHIT, they themselves must be "*furnished by a public utility*" to be subject to the Commission's jurisdiction and authority. *Id.* (emphasis added).

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

In determining whether the unregulated Parking Operations are ancillary to the regulated utility Ferry Operations, the Commission "[found] persuasive, though not directly on point," our Supreme Court's reasoning in *State ex rel. Utils. Comm'n v. Southern Bell Tel. & Tel. Co.*, 307 N.C. 541 (1983). In *Southern Bell*, our Supreme Court held that the Commission may consider revenue that Southern Bell, a regulated public utility providing telephone service, received from its unregulated advertising directory operations ("yellow pages") for the single purpose of ratemaking determinations. *Id.* at 544. Our Supreme Court reasoned that

> [a]lthough Southern Bell is technically correct in its contention that actual transmission of messages across telephone lines is not dependent on the existence of the yellow pages, such an interpretation of the public utility function is far too narrow. Southern Bell's utility function is to provide adequate service to its subscribers. To suggest that the mere transmission of messages across telephone lines is adequate telephone service is ludicrous.

*Id.*

In the present case, the Commission relied upon similar reasoning, finding that

> the Parking Operations are necessary to the Ferry Operations. Indeed, by these unique circumstances, the Ferry is almost entirely dependent upon the Parking Operations, and the Parking Operations are almost entirely dependent on the Ferry Operations. To this end, the Commission notes and credits the testimony of Club witness Sawyer, who asserts that it "would practically be impossible for people to use the BHI ferry or for the ferry to operate without the parking facilities at the Deep Point ferry landing." And that—and the integral nature of the Parking Operations—is due in large part to the unique nature of Bald Head Island, as a largely automobile-free

24

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

refuge, as well as how these adjoining services were
planned from the outset to serve the other.

We note that *Southern Bell* raised no issue, and therefore made no determination, as to whether the yellow pages were subject to the Commission's regulatory authority generally. Our Supreme Court noted only

that the yellow pages have never been and are not now
regulated by the Utilities Commission. However, the fact
that a specific activity *of a utility* is not regulated does not
mean that the expenses and revenues from that activity
cannot be included in determining the rate structure of the
utility.

*Id.* (emphasis added). Nevertheless, we recognize that, historically, our Supreme Court has upheld a finding of the Commission—when supported by competent, material, and substantial evidence—that *a public utility's* otherwise unregulated activities are nevertheless "an integral part of [its] providing adequate [utility] service." *Id.* at 545-46.

In *Southern Bell*, however, the same regulated public utility telephone company operated the unregulated yellow pages. Here, be as it may that Respondents are parent and wholly-owned subsidiary, they are two separate entities and are treated as such unless and until the Commission finds that BHIL, as parent company of BHIT, has an effect on the rates or service of the utility Ferry Operations.

Then, and only then, may the Commission conclude that BHIL is subject to its regulatory authority as a public utility within the meaning of N.C.G.S. § 62-3(23)(c) *to no more than* the extent of its affiliation's effect on BHIT's regulated utility Ferry

25

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

Operations' rates or service.[1]  N.C.G.S. § 62-3(23)(c) (2023); *see generally State ex rel. Utils. Comm'n v. Edmisten*, 299 N.C. 432, 438 (1980) (emphasis added) ("*To the degree, then, that the* record in the instant case reveals facts which support an inference that [the wholly-owned subsidiary utility company]'s *relationship* with [its wholly-owned sister utility company] and [parent company] . . . *affects [the subsidiary utility company]'s service* to its North Carolina customers, *the circumstances of that relationship are material* and must be scrutinized closely by the Commission in the course of its rate making proceedings.  The doctrine of corporate entity should not stand as a shield to such an inquiry.").

Here, the record before us contains competent, material, and substantial evidence to support the Commission's finding that "the operations of BHIL, BHIT's parent corporation, impact the rates or service of the regulated utility, BHIT[]" such that the circumstances of that relationship subject the sale of BHIL's Parking

---

[1] We note that our Supreme Court has held that the Commission may exercise jurisdiction over complaints arising from inadequate public utility services that are provided by non-utility entities on behalf of a public utility.  *See, e.g.*, *State ex rel. Utils. Comm'n v. Southern Bell Tel. & Tel. Co.*, 326 N.C. 522, 529 (1990) ("While Southern Bell, the regulated public utility, is the entity which is required by tariff to publish the telephone directory, it has contracted with BAPCO to take over this duty and publish the directory.  As noted earlier, BAPCO contends that it is not subject to the complaint jurisdiction of the Commission because BAPCO is not a 'public utility' as defined by the statute.  We have already concluded that publishing the directory, which must include proper telephone listings in both the white pages and the yellow pages, is a utility function which comes under the jurisdiction of the Commission.  Since publishing the directory with correct listings is a public utility function, and since BAPCO is performing this function for Southern Bell, the Commission has jurisdiction over BAPCO to handle any complaints which arise from BAPCO's performance of this function without regard to whether BAPCO itself is a public utility.").  However, our Supreme Court did not reach, and therefore declined to address, the issue of whether BAPCO, a non-utility entity, was subject to the Commission's jurisdiction more broadly as an alter ego or agent of the utility entity, Southern Bell. *Id.*

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

Operations to the Commission's regulatory oversight. *Cf. id.* (holding that, when the record reveals the relationship between wholly-owned subsidiary utility company and parent company affects utility service, the Commission must scrutinize that relationship closely for ratemaking purposes).

Ultimately, the Commission concluded that it

> has jurisdiction and regulatory authority over the Parking Operations, as currently owned and operated by the Ferry Operations parent corporation, that have an effect on the rates or service of BHIT within the meaning of N.C.G.S. § 62-3(23)(c).

The Commission recognized

> that parking, taken by itself, is not inherently a monopoly service and that, theoretically, a competitive alternative might later emerge to serve the public. When and if it does so, the Commission's calculus might change. But that recognition does not alter the fact that, at present, by either planning or evolution the Ferry Operations have become interdependent upon the Parking Operations and that there are no existing practicable alternatives to that service. The Commission also recognizes that there are a number of impediments to the likely development of such a competitive alternative in the near term—not the least of which is that BHIT and BHIL intended the Transportation Facility to be an all-encompassing, and quite convenient, "ferry base" or that BHIT, BHIL, and the Town of Southport each direct ferry customers solely to use of the Parking Facilities. The practical realities of competing with a property owner who purchased the property in Southport long ago, and the natural disadvantages for future competitors—e.g., any competitive parking would be off-site, necessitating a shuttle service to and from the terminal, and at additional expense to the owner, and would be less convenient and therefore less desirable to potential passengers—make it unlikely that any near-term

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

competition will arise in the market. Respondents witness Paul concedes that any entity that might "come in to create a secondary parking lot operation and shuttle" service nearby, even were that entity to "buy the property . . . across the street would be taking a big chance on the fact that there is enough unit demand to support that, especially given that right now, other than a handful of times during the year, the unit demand is not there."

With respect to the impact of BHIL's Parking Operations on the service of BHIT's Ferry Operations, the Commission reasoned that

> BHIT's new Transportation Facility was planned from the outset to include BHIL's Parking Operations and provide such parking to ferry passengers as was necessary to adequately serve those customers. And there is no doubt these Parking Facilities were provided—in this case by BHIL—in part to alleviate specific Ferry customer concerns. There is also little doubt that the affiliation between parent and subsidiary allows BHIT to provide more convenient access to parking for the benefit of its customers. As stated above, were the Parking Operations to cease operation tomorrow, the public's use of the Ferry service would be significantly impaired.

Respondents admit that, when moving BHIT's Ferry Operations to the Deep Point Terminal—and, in fact, when constructing the terminal—one purpose "was to better accommodate travelers to and from the Island and provide opportunities for expansion of additional non-regulated business activities around the Parking Facilities and the Deep Point terminal in general." The record is replete with evidence that no public, practicable alternative parking facility or service is available to ferry riders. By Respondents' own admission, "most" ferry riders utilize BHIL's Parking Operations prior to boarding the ferry and "no other regular bus service from

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

another public parking lot to and from the Deep Point Terminal [is] operating at this time."

The Commission further reasoned that,

> [o]n this record, it is apparent to the Commission that use of the Parking Facilities is derivative of Ferry use and vice versa—essentially every person who parks in the BHIL-owned parking lots rides the BHIT-owned ferry; conversely, essentially every ferry passenger parks in the BHIL-owned lots. It is equally apparent to the Commission that were the Parking Operations to cease operation tomorrow (or were BHIL to prohibit public parking in its lots), the public's use of the Ferry would be significantly impaired. As a result, a significant number of persons would choose not to travel to the Island. It is easy to conclude on this record that ferry ridership is dependent upon, and would noticeably decline but for the operation of, the Parking Facilities.
>
> Based on the findings and consideration of the entire record, the Commission finds and concludes that the Parking Facilities provide the only reasonable means of public parking for ferry passengers and the only reasonable access to the Deep Point Terminal, there is no existing alternative or reasonably substitutable parking facility or service available to the public at this time, and, as a result, the Parking Facilities are necessary to the operation of the Ferry Operations.

To echo one ferry rider's sentiment in the record, "[y]ou can't use the ferry service without parking your car." Respondents' stated intent in constructing the Deep Point Terminal and relocating BHIT's Ferry Operations to the terminal, the geographical location of the Deep Point Terminal, expert testimony as to market conditions, and ferry rider testimony as to the practical implications of the

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

relationship between the Parking and Ferry Operations provide competent, material, and substantial evidence to support the Commission's finding that BHIL's Parking Operations, which operate as a de facto monopoly in service of BHIL's subsidiary, have an effect on the adequacy and practicability of BHIT's regulated Ferry Operations' service.

Although the Commission need only find that BHIL's Parking Operations impact the rates *or* service of BHIT's Ferry Operations to support its conclusion that BHIL may be treated as a public utility pursuant to N.C.G.S. § 62-3(23)(c), it further reasoned with respect to the Parking Operations' impact on rates that

> generally the easier BHIL has made it for customers to access the Ferry Operations has meant more riders on the Ferry; more riders mean more revenues. All else being equal, more riders and more revenues translates over time to lower rates for those ferry customers.
>
> The affiliation also strongly suggests to the Commission that BHIL has been subsidizing the Ferry Operations because BHIL views the Parking and Ferry Operations as connected. The Parking Operations have provided substantial positive cash flow and strong positive financial net income. In contrast, the Ferry has consistently shown annual financial losses. Yet BHIT has not filed a general rate case since 2010. Some witnesses opined that it has not done so because, if properly included, the overall rate of return on BHIL's transportation-related businesses—its combined Parking and Barge Operations and BHIT's Ferry Operations—would be nevertheless above what a public utility would be entitled to earn were the system to come under Commission review. As discussed more fully below, the Commission leaves to a future proceeding how to properly account for or quantify the effect the affiliation has on BHIT's rates.

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

Finally, the Commission notes that BHIL's affiliation has already had a direct effect upon BHIT's rates. The parties agreed to a regulatory outcome in the last rate case where BHIL's affiliation with the Ferry Operations not only directly—and quantifiably—affected the rates that BHIT was permitted to charge for its Ferry services but also controlled the rates that BHIL could charge for its Parking Operations. Respondents witness Paul agreed that the imputation of the approximately $525,000[.00] of revenue from the Parking Operations was in part "a product of the fact that the intervenors in the rate case had requested and were advocating that the Commission regulate the parking operations[.]" Although not binding upon the parties in future proceedings, BHIL's affiliation with BHIT, its intervention in the 2010 Rate Case, and this imputation directly affected the rates that BHIT has charged for Ferry service since 2010.

The record contains expert testimony that BHIT's "ferry is consistently showing significant annual financial losses[.]" During the 2010 rate case, BHIT stated that it "has operated at a loss every year since 1999." By contrast, it has referred in investor presentations to the Parking Operations as "extremely" and "very profitable[.]" One expert testified that

it is [] unassailable that the existing ferry rates are currently directly "affected" by parking revenues. In fact, it appears that it has long been the practice by [BHIL] of using the "extremely profitable" [P]arking [O]perations to support the regulated [Ferry] [O]perations. As explained in the direct testimony of [another expert witness], which is being submitted along with my own testimony, the [F]erry [O]perations have been losing money, while the [P]arking and [B]arge Operations have been highly profitable. [BHIL] has been using the parking's cash to balance the economics of the transportation enterprise as a whole; and this financial strategy unquestionably impacts the rates and operations of the ferry service.

31

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

For example, the settlement reached in BHIT's 2010 rate case imputed, by Respondents' stipulation, $523,097.00 of revenues from the Parking Operations to the Ferry Operations for the purpose of the rate case.[2] The expert testimony, financial statements, and 2010 rate case settlement contained in the record provide competent, material, and substantial evidence to support the Commission's finding that BHIL's Parking Operations, which operate at a significant annual financial profit, have an effect on the rates of BHIT's Ferry Operations, such that the Ferry Operations may—and do—operate at a significant annual financial loss because they are subsidized—as reflected in the record—by BHIT's parent.

We agree with Respondents' assertion that, standing alone, a parking lot does not fall within any category of public utility as defined in N.C.G.S. § 62-3(23)(a). However, the record before us contains competent, material, and substantial evidence of the effect created by utilizing the parent company's unregulated Parking Operations to service the subsidiary company's regulated utility Ferry Operations on

---

[2] Respondents contend that, because the settlement reached in the 2010 rate case "establish[ed] no binding precedent for future cases" and was "said not to be binding in future cases as a reason for or against imputation of parking revenues or any other regulatory treatment of parking operations[,]" it may not be considered for the purposes of this case. We disagree. The Commission acknowledged that, while the settlement may not *control* the outcome as precedent binding the Commission's decision in this case, it may nevertheless be considered as persuasive evidence of past treatment. Much like an unpublished opinion has no precedential value but "may be used as persuasive authority at the appellate level if the case is properly submitted and discussed and there is no published case on point[,]" *Groseclose v. Groseclose*, 291 N.C. App. 409, 424 n.1 (2023) (quoting *Zurosky v. Shaffer*, 236 N.C. App. 219, 233-34 (2014)), the 2010 rate case—which was properly submitted and discussed in this case in the absence of any binding determination of the Parking and Barge Operations' regulatory statuses—may be used as persuasive authority.

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

the regulated utility's rates and service. This evidence supports the Commission's finding of fact that "the [Parking] [O]perations of BHIL, BHIT's parent corporation, impact the rates or service of the regulated utility, BHIT." The Commission's findings of fact, in turn, support its conclusion that BHIL's Parking Operations are subject to its regulatory authority within the confines of N.C.G.S. § 62-3(23)(c).

We hold that the Commission did not err in concluding on the record before us that the relationship between parent BHIL, through its Parking Operations, and wholly-owned subsidiary BHIT, through its Ferry Operations, affects the utility rates and service of the regulated utility such that BHIL may be subject to the Commission's regulatory authority within the narrow confines of N.C.G.S. § 62-3(23)(c). We cannot affirm the Commission's sweeping determination that "the Parking Operations are subject to the Commission's jurisdiction and regulatory authority[]" without emphasizing that this authority extends only insofar as BHIL may be considered a "public utility[,]" within the meaning of N.C.G.S. § 62-3(23)(c) because of, *and only to the extent of*, the effect that the parent company BHIL has on its subsidiary company BHIT's utility rates and service. To hold otherwise would create dangerous precedent and allow for unbridled Commission authority over the otherwise free market principles of our economic system and lower the value of real estate through restrictions on the alienability of land. Such global authority over non-utility business activities and entities would be in dereliction of the limited statutory confines established by our General Assembly. Pursuant to N.C.G.S. § 62-

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

3(23)(d2), "[i]f any person conducting a public utility shall also conduct any enterprise not a public utility, such enterprise is not subject to the provisions of this Chapter." N.C.G.S. § 62-3(23)(d2) (2023). BHIL may be regulated as merely to the extent that its Parking Operations' impact on the rates or service of BHIT's Ferry Operations; however, any enterprise conducted by BHIL which is *not* within this limited scope is beyond the bounds of N.C.G.S. § 62-3(23) and *is not subject* to the Public Utilities Act or to *any* regulation by the Commission.[3]

Based on the specific factual circumstances before us, we hold that BHIL's Parking Operations are subject to Commission regulation to the extent described within this opinion. We affirm the Commission's order as modified in this opinion as to the Parking Operations and uphold its provision "[t]hat BHIL shall not sell, assign, pledge, or transfer the Parking [] Operations without prior Commission approval[]" pursuant to the potential impact that divesting the Parking Operations may have on the rates and services of the regulated utility Ferry Operations.

**2. Barge Operations**

---

[3] Here, the integral nature of the Parking and Ferry Operations that subjects BHIL to Commission jurisdiction within the confines of N.C.G.S. § 62-3(23)(c) is necessarily predicated on the two operations acting as a single enterprise. *See Southern Bell,* 307 N.C. at 545 (holding that yellow pages did not fall within statutory exemption under (d2) because they were "not a separate enterprise from the transmission of telephone messages[]" but "a very useful and beneficial component in providing telephone service to the public[]"). However, we reference this statute to emphasize that our holding is limited to the regulatory status of BHIL through its Parking Operations' impact on BHIT's Ferry Operations, and may not be expanded to its Barge Operations, nor to any future operations, which are not a public utility.

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

For the reasons discussed above, *see supra Part B.1*, the Commission must conclude that BHIL is a public utility through its Barge Operations before it may exercise jurisdiction over the Barge Operations. The Village alleged that BHIL, through its Barge Operations, is a public utility subject to the Commission's jurisdiction and regulatory authority either because the Barge Operations are, in and of themselves, a public utility pursuant to N.C.G.S. §§ 62-3(6) and 62-3(23)(a)(4) or because the Barge Operations are owned by BHIT's parent corporation and have an effect on the rates or service of BHIT's Ferry Operations. The Commission concluded *only* that the Barge Operations are "ancillary to the Ferry Operations [and] necessary to the very existence of the Island as a destination to which the public might wish to travel." The Commission made no finding that BHIL, as BHIT's parent corporation, has an effect on the rates or service of BHIT's Ferry Operations through its Barge Operations such that it may be treated as a public utility under N.C.G.S. § 62-3(23)(c). The Commission further declined to determine "whether the Barge Operations are a common carrier service which transports persons or household goods within the meaning of N.C.G.S. §§ 62-3(6) and (23)(a)(4)."[4]

Even assuming, *arguendo*, that the Commission properly concluded that the Barge Operations are ancillary to the Ferry Operations, it made no finding that the Barge Operations are a service *furnished by a public utility* as necessary under

---

[4] We do not remand to the Commission for consideration of the Village's unreached contention, as the Village's complaint was insufficient to establish justiciability of this issue. *See supra Part A.2.*

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

N.C.G.S. § 62-3(27). The Commission's findings of fact are insufficient to support its conclusion that the Barge Operations are subject to its regulatory authority as an ancillary service to BHIT's Ferry Operations. The Commission makes general findings of the Barge's importance to the Island as a whole; however, that the Barge Operations provide a convenience to the Island has no bearing on its affiliation with BHIT's Ferry Operations. Furthermore, the record is devoid of any competent, material, and substantial evidence to support a finding that the Barge Operations have an impact on the rates or service of the Ferry Operations.

We hold that the Commission erred in concluding that BHIL's Barge Operations are subject to its regulatory authority as a service ancillary to BHIT's Ferry Operations, and that the Commission had no jurisdiction to order, pursuant to that conclusion, that BHIL may not sell, assign, pledge, or transfer the Barge Operations without its approval. We reverse the Commission's order as it pertains to the Barge Operations.

## **CONCLUSION**

The Village's complaint conferred jurisdiction upon the Commission to enter a judgment declaring the utility status of BHIL and its Parking and Barge Operations through their relationships with BHIT and its Ferry Operations. The Commission properly concluded that it may regulate the sale of BHIL's Parking Operations because BHIL, as parent, utilizes the unregulated Parking Operations to service its wholly-owned subsidiary's regulated Ferry Operations, and this relationship has an

36

VILL. OF BALD HEAD ISLAND, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*Opinion of the Court*

effect on the rates and service of the regulated ferry utility. The Commission erred in concluding that BHIL's non-utility Barge Operations are ancillary to BHIT's utility Ferry Operations and in concluding that it may regulate the sale of these non-utility assets and operations. We affirm the Commission's order as to the Parking Operations as modified within this opinion to clarify the statutory limitations of the Commission's jurisdiction over BHIL and its Parking Operations, and we reverse the Commission's order as to the Barge Operations.

AFFIRMED AS MODIFIED IN PART; REVERSED IN PART.

Judge GORE concurs.

Chief Judge DILLON concurs in parts and dissents in part by separate opinion.

No. COA 23-424 – *Vill. of Bald Head Island, et al. v. Bald Head Island Transp., Inc. et al.*

Dillon, Chief Judge, concurring in part, dissenting in part.

This matter involves the Ferry Operation, the Parking Operation, and the Barge Operation servicing residents and visitors of Bald Head Island. The parties all concede that the Ferry Operation is a public utility.

I concur in the majority's holding that, based on the Commission's findings and Supreme Court jurisprudence, the Commission has jurisdiction to regulate the Parking Operation. Our General Assembly has identified various activities as public utility functions, including the transportation of passengers for compensation. That body also included within the Commission's regulatory authority "any ancillary service" used in connection with such statutorily enumerated public utility function. N.C.G.S. § 62-3(27). Our Supreme Court has held the Commission's jurisdiction extends beyond the functions expressed in Chapter 62:

> [T]he emphasis should be placed on the *public utility function* rather than a literal reading of the statutory definition of "public utility," and the statutory definition should not be read so narrowly as to preclude Commission jurisdiction over a function which is required to provide adequate service to the subscribers.

*Commission v. Southern Bell*, 326 N.C. 522, 528 (1990).

By way of example, the printing of a "yellow page directory" is not expressly included within the statutory definition of a public utility. However, providing telephone lines for communication is expressly included. N.C.G.S. § 62-3(23). And our Supreme Court has held that since the directory service by a phone company is

VILL. OF BALD HEAD, ET AL. V. BALD HEAD ISLAND TRANSP., INC., ET AL.

*DILLON, C.J., concurring in part, dissenting in part*

an integral part of the company's function of providing adequate telephone communication lines, the directory function is part of the public utility function and, therefore, subject to the Commission's jurisdiction. *See State ex. rel. Utilities Commission v, Southern Bell*, 307 N.C. 541 (1983).

In the same way, based on the facts as found by the Commission concerning Bald Head Island, the parking lot is an integral part in providing ferry transportation service to passengers traveling to and from the Island.

Regarding the Barge Operations, I dissent. The Commission concluded that

> the Barge Operations, as currently and operated by the Ferry Operations parent corporation, are at the least an ancillary service to the Ferry Operations and are thus subject to the Commission's jurisprudence and regulatory authority. Based on this determination, the Commission further concludes that it is unnecessary to reach the alternate grounds argued by [the Village] in support of the Commission's regulatory jurisdiction – that is, whether the Barge Operations are a common carrier service which transports persons or household goods within the meaning of N.C.G.S. § 62-3(6) and (23)(a)(4).

While the Barge Operation may be integral in allowing residents of the Island enjoy *their homes* on the Island, I agree with the majority that the Barge Operation is not ancillary to the Ferry Operation, in that the Barge Operation is not integral in providing residents ferry transportation to the Island. However, it may be that the Barge Operation, to the extent it provides transportation of household goods or passengers for compensation, is itself a public utility, subject to regulation by the Commission for those activities. My vote is to vacate, rather than reverse, that portion of the order and remand for the Commission's consideration of this issue.